# NO.13-4661

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

JAIME WILLS, on behalf of himself and
all others similarly situated,

                Plaintiff-Appellant,

vs.

RADIOSHACK CORPORATION,

                Defendant-Appellee.

:
:
:
:
:
:
:
:
:
:
:
:

Appeal from S.D.N.Y.
Case No. 13-cv-2733

---

## BRIEF OF APPELLANT JAIME WILLS

---

Joshua R. Cohen
*jcohen@crklaw.com*
Jason R. Bristol
*jbristol@crklaw.com*
Cohen Rosenthal & Kramer LLP
The Hoyt Block Bldg. – Suite 400
700 West St. Clair Avenue
Cleveland, Ohio 44113
(216) 781-7956 (Telephone)
(216) 781-8061 (Facsimile)


Anthony J. Lazzaro
*Anthony@lazzarolawfirm.com*
The Lazzaro Law Firm, LLC
920 Rockefeller Building
614 West Superior Avenue
Cleveland, Ohio 44113
(216) 696-5000 (Telephone)
(216) 696-7005 (Facsimile)

**Counsel for Plaintiff-Appellant
Jaime Wills**

Charles A. Bird
*cbird@mckennalong.com*
McKenna Long & Aldridge LLP
600 W. Broadway – Suite 2600
San Diego, California 92101
(619) 699-2406 (Telephone)
(619) 645-5360 (Facsimile)

**Counsel for Defendant-Appellee
RadioShack Corporation**


Rachel Goldberg
*goldberg.rachel@dol.gov*
U.S. Department of Labor
200 Constitution Avenue N.W.
Room N2716
Washington D.C. 20210
(202) 693-5556 (Telephone)

**Counsel for Amicus Curiae
U.S. Department of Labor**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................... v

JURISDICTIONAL STATEMENT ............................................. 1

STATEMENT OF ISSUES ............................................................ 2

STATEMENT OF FACTS ............................................................ 3

    I.   Local Rule 28.1 Disclosures................................................ 3

   II.   Procedural History .............................................................. 4

  III.   The RadioShack Compensation Plan ................................. 4

  IV.   The FLSA............................................................................ 5

   V.   The FWW Method of Calculating Overtime Pay .............. 6

        A.   General Background .................................................... 6

        B.   Effect in Reducing Rate of Overtime Pay ................. 6

        C.   "Fixed Salary" as Prerequisite ................................... 8

  VI.   The Proposed Change to § 778.114 ................................... 9

 VII.   The Final Rule .................................................................... 9

VIII.   RadioShack's Failure to Change Overtime Policy ............. 11

  IX.   Dismissal of the Lawsuit .................................................... 11

SUMMARY OF ARGUMENT .................................................... 13

LAW AND ARGUMENT ............................................................. 16

    I.   The Court reviews the Plaintiff's complaint *de novo* in assessing the appropriateness of dismissal under Fed. R. Civ. P. 12(b)(6).................................................................... 16

   II.   The NYLL follows the FLSA with respect to overtime issues generally and the "fluctuating work week" in particular............................................................................ 16

-ii-

## **TABLE OF CONTENTS**

**Page**

A.  The NYLL adopts the FLSA's definition and standards regarding overtime ...................................... 16

B.  New York's conception of the fluctuating work week method comes exclusively from the FLSA................ 18

III.  The FWW significantly favors employers and compromises employees' rights to overtime compensation.................................................... 19

IV.  Neither the FLSA itself nor the *Missel* decision indicates whether payment of bonuses render the FWW unavailable......................................................... 22

V.  Section 778.114 precluded payment of performance bonuses under the FWW even before the Department of Labor issued its Final Rule................................. 23

VI.  Under the Final Rule, the payment of any type of bonus precludes the existence of a "fixed salary" for purposes of the FWW.......................................................... 26

A.  Fundamental rules of construction confirm that the Final Rule makes no exception for performance-based bonuses............................................... 27

B.  Other courts have held that the Final Rule forbids the payment of performance bonuses............................... 29

VII.  The Department of Labor was fully justified in banning performance bonuses under the Final Rule..................... 30

VIII.  The Court should defer to the Final Rule in holding that RadioShack's bonus program renders the FWW unavailable......................................................... 31

A.  *Sisson* holds that the Final Rule deserves deference under *Chevron* ............................................. 31

B.  Courts generally defer to an agency's interpretation of its own regulations .................................. 32

-iii-

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

C.  At the very least, the Court should extend *Skidmore* deference to the Final Rule............................................ 34

**CONCLUSION**............................................................................ 37

**CERTIFICATE OF COMPLIANCE** ......................................... 38

**CERTIFICATE OF SERVICE** .................................................... 39

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anderson v. Ikon Office Solutions*,
38 A.D. 3d 317, 833 N.Y.S.2d 1 (2007)......................................   18

*Auer v. Robbins*,
519 U.S. 452 (1997)...............................................................   33

*Ayers v. SGS Control Servs.*,
No. 03 Civ. RMB,
2007 WL 646326 (S.D.N.Y. Feb. 27, 2007)........................... 24, 25-26

*Barrentine v. Arkansas-Best Freight Sys.*,
450 U.S. 728 (1981).......................................................   22

*Bates v. U.S.*,
522 U.S. 23 (1997).........................................................   27, 28

*Berlin v. Renaissance Rental Partners*,
723 F.3d 119 (2d Cir. 2013)............................................   33

*Brantley v. Inspectorate Am. Corp.*,
821 F. Supp. 2d 879 (S.D. Tex. 2011).......................................   24, 25

*Brumley v. Camin Cargo Control*,
No. 08-1798 (JLL),
2010 WL 1644066 (D.N.J. Apr. 22, 2010)................................   24

*Caraballo v. City of Chicago*,
__ F. Supp. 2d __, No. 07-cv-2807,
2013 WL 4552255 (N.D. Ill. Aug. 27, 2013)..............................   19

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*,
467 U.S. 837 (1984)................................................... 15, 31, 32

*Cohen v. S.A.C. Trading Corp.*,
711 F.3d 353 (2d Cir. 2013).........................................   16

*Condo v. Sysco Corp.*,
1 F.3d 599 (7th Cir. 1993)................................................ 21-22, 32, 35

# TABLE OF AUTHORITIES

**Page**

## Cases

*Decker v. Northwest Env'l Defense Ctr.*,
133 S.Ct. 1326 (2013)................................................................... 33

*Dingwall v. Friedman Fisher Assoc.*,
3 F. Supp. 2d 215 (N.D.N.Y. 1998)............................................. 19

*Forest Watch v. U.S. Forest Serv.*,
410 F.3d 115 (2d Cir. 2005).......................................................... 27

*Guadalupe v. Tri-State Employment, Mgmt & Consulting*,
No. 10-cv-3840 NG CLP,
2013 WL 4547242  (E.D.N.Y. Aug. 28, 2013)......................... 25

*Hasan v. GPM Inv.*,
896 F. Supp. 2d 145 (D. Conn. 2012)....................................... 35

*Heder v. City of Two Rivers*,
295 F.3d 777 (7th Cir. 2002)..................................................... 22

*In re 62 Cases*,
340 U.S. 593 (1951) .................................................................... 27

*In re RadioShack Corp.*,
No. 13-0304 (6th Cir. Mar. 5, 2014)............................................ 13

*Jacob v. Duane Reade, Inc.*,
293 F.R.D. 578 (S.D.N.Y. 2013).................................................. 18

*Jemine v. Dennis*,
901 F. Supp. 2d 365 (E.D.N.Y. 2012).......................................... 17

*Kadden v. VisuaLex LLC*,
910 F. Supp. 2d 523 (S.D.N.Y. 2012)......................................... 18-19

*Klein v. Torrey Point Group*,
__ F. Supp. 2d __, No. 12 Civ.. 1190 KPF,
2013 WL 5761401 (S.D.N.Y. Oct. 23, 2013).............................. 20

*Life Receivables Trust v. Syndicate 102*,
549 F.3d 210 (2d Cir. 2008)........................................................ 28

## TABLE OF AUTHORITIES

**Page**

### Cases

*Lopes v. Department of Social Serv.*,
696 F.3d 180 (2d Cir. 2012)........................................................... 35

*Martinez v. Hilton Hotels Corp.*,
930 F. Supp. 2d 508 (S.D.N.Y. 2013)........................................... 19

*Mitchell v. Abercrombie & Fitch*,
428 F. Supp. 2d 725 (S.D. Ohio 2006)......................................... 22

*Mullins v. City of New York*,
653 F.3d 104 (2d Cir. 2011),
*cert. denied*, 132 S.Ct. 1744 (2012)............................................. 33

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
723 F.3d 192 (2d Cir. 2013)........................................................... 17

*New Jersey Carpenters Health Fund v
Royal Bank of Scotland Group*,
709 F.3d 109 (2d Cir. 2013)........................................................... 16

*Nielsen v. Rabin*,
___ F.3d ___, No. 12-4313-PR,
2014 WL 552805 (2d Cir. Feb. 13, 2014)................................... 16

*O'Brien v. Town of Agawam*,
350 F.3d 279 (1st Cir. 2003)...................................................... 23,24

*Overnight Motor Transp. Co. v. Missel*,
316 U.S. 572, 578 (1942)........................................................ *passim*

*Pennsylvania Fed. Of Sportsmen's Clubs v. Kempthorne*,
497 F.3d 337 (3d Cir. 2007)........................................................... 27

*Pirri v. Manhattan Luxury Auto.*,
No. 115480/08, (N.Y.S.Ct. Apr. 14, 2010) ................................. 18

*Reiseck v. Universal Comm.*,
591 F.3d 101 (2d Cir. 2010)........................................................... 17

# TABLE OF AUTHORITIES

**Page**

### Cases

*Sisson v. RadioShack*,
No. 1:12-CV-958, 2013 WL 945372
(N.D. Ohio Mar. 11, 2013)........................................................ *passim*

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)................................................................ 15,35,36

*Soderberg v. Naturescape, Inc.*,
No. 10-3429 (PAM/JJG),
2011 WL 11528148 (D. Minn. Nov. 3, 2011)............................ 26

*Spencer v. No Parking Today, Inc.*,
No. 12 Civ. 6323 ALC AJP,
2013 WL 1040052 (S.D.N.Y. Mar. 15, 2013).......................... 18

*Switzer v. Wachovia Corp.*,
No. H-11-1604, 2012 WL 3685978
(S.D. Tex. Aug. 24, 2012)........................................................ 25,29

*Thomas v. Meyers Assoc.*,
39 Misc. 3d 1271(A), No. 651720/2011,
2013 WL 177483 (N.Y.S.Ct. Apr. 18, 2013).............................. 17

*U.S. v. Banki*,
685 F.3d 99 (2d Cir. 2012)........................................................ 27

*U.S. v. Cooper Corp.*,
312 U.S. 600 (1941)................................................................ 28

*U.S. v. Mead Corp.*,
533 U.S. 218 (2001)................................................................ 32,35

*Wetzler v. FDIC*,
38 F.3d 69 (2d Cir. 1994)........................................................ 27,28

*Wills v. RadioShack Corp.*,
__ F. Supp. 2d __, No. 13 Civ. 2733 (PAE),
2013 WL 5951078 (S.D.N.Y. Nov. 7, 2013)........................ *passim*

# TABLE OF AUTHORITIES

**Page**

## Cases

*Zutrau v. Ice Sys.*,
38 Misc. 3d 1235(A), 969 N.Y.S.2d 807,
No. 37576-09, 2013 WL 1189213 (N.Y.S.Ct. Mar. 20, 2013).....    17

## Other Authorities

29 C.F.R. § 778.114.................................................................. *passim*

29 C.F.R. § 778.208..................................................................    25

Fed. App. R. 4 .........................................................................    1

Fed. R. Civ. P. 12 ....................................................................    16

33 FED. REG. 986 (Jan. 26, 1968)................................................    34

76 FED. REG. 18832 (Apr. 5, 2011)............................................ *passim*

H.R. REP. NO. 101-260 (Sept. 26, 1989)....................................    5

Local R. 28.1 (Second Cir.)........................................................    3

12 N.Y. COMP. CODES R. & REG. § 142.2-2 ................................    17

Notice of Proposed Rulemaking and Request for Comment,
73 FED. REG. 43654 (July 28, 2008)........................................ 9,10,32

28 U.S.C. § 1291 .......................................................................    1,2

28 U.S.C. § 1332 .......................................................................    1

29 U.S.C. § 202..........................................................................    5

29 U.S.C. § 7.............................................................................7,14,25,30

## JURISDICTIONAL STATEMENT

1.    **Jurisdiction of the District Court.**  The district court had jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act, in light of the following facts:

> A)    the amount in dispute exceeds $5,000,000, exclusive of interest and costs;
>
> B)    the action is a class action in which the defendant and at least one member of the putative class are citizens of different states; and
>
> C)    the number of putative class members exceeds 100, and the defendant is not a state official, state, or some other governmental entity.

2.    **Appellate Jurisdiction.**  The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, since Appellant Jaime Wills is seeking direct review of a final decision entered by a United States district court within this circuit.

3.    **Timeliness of Appeal.**  Wills filed his Notice of Appeal on December 5, 2013, seeking review of a decision entered by the district court on November 7, 2013.  The appeal commenced before the 30-day deadline established under Fed. App. R. 4(a)(1)(A).

-1-

4.    **Final Appealable Order.**  Wills is seeking review of the district court's decision to dismiss his First Amended Complaint with prejudice.  The ruling constitutes a final appealable order for purposes of 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    Do the overtime compensation rules under the New York Labor Law track those established under the federal Fair Labor Standards Act, in keeping with the explicit mandate of regulations adopted by the New York Department of Labor?

2.    Did the district court err in concluding that employees receive a "fixed salary" for purposes of the "fluctuating work week" method of computing overtime pay, when a substantial portion of their compensation takes the form of bonuses that vary from quarter to quarter?

3.    In construing 29 C.F.R. § 778.114, did the district court properly add terms that do not appear in the test and imply qualifications and conditions that do not comport with the Department of Labor's express policy concerns?

4.    Did the district court correctly decline to defer to a Final Rule adopted by the Department of Labor after undertaking formal notice-and-comment rulemaking procedures?

## STATEMENT OF FACTS

I.    **Local Rule 28.1 Disclosures**

This is a putative class action brought under the New York Labor Law for unpaid overtime compensation.  Appellant Jaime Wills filed the litigation against Appellee RadioShack Corporation on April 24, 2013 in the United States District Court for the Southern District of New York.  The Honorable Paul A. Engelmayer presided.

Wills alleged that RadioShack unlawfully used the "fluctuating work week" ("FWW") method of calculating overtime pay.  Wills sought to prosecute his NYLL claim on behalf of himself and other managers of RadioShack stores in the State of New York with annual sales volume of less than $750,000.  APPENDIX, pp. 89-90, ¶15-¶16.  RadioShack had a separate Compensation Plan for stores of this type.

The district court dismissed Wills's First Amended Complaint. *Wills v. RadioShack Corp.*, __ F. Supp. 2d __, No. 13 Civ. 2733 (PAE), 2013 WL 5951078 (S.D.N.Y. Nov. 7, 2013).  Wills is appealing from this decision.

-3-

II.    **Procedural History**

Wills filed the First Amended Complaint on June 25, 2013. In the revised pleading, Wills added two declaratory judgment claims, one of which asked the district court to hold that after May 5, 2011, when the U.S. Department of Labor issued a Final Rule addressing the FWW, the NYLL's incorporation of federal law prohibited this method of calculating overtime pay by employers that included bonuses as part of their employees' compensation. APPENDIX, p. 94, ¶39-¶42.

RadioShack fell within this category. Under his second declaratory judgment claim, Wills sought a ruling that the collateral estoppel doctrine precluded RadioShack from contesting this point, given a decision rendered by the United States District Court for the Northern District of Ohio in *Sisson v. RadioShack*, No. 1:12-CV-958, 2013 WL 945372 (N.D. Ohio Mar. 11, 2013).

The court granted RadioShack's motion to dismiss the First Amended Complaint on November 7, 2013. This appeal ensued.

III.    **The RadioShack Compensation Plan**

RadioShack's "Non-Exempt Store Manager Compensation Plan" for "Non-California Stores," covers retail stores with annual sales volume of less than $750,000. APPENDIX, pp. 89-90 , ¶15-¶16. Under its

-4-

terms, Wills and other store managers received "a base salary for all hours worked each workweek." *Id.*, p. 90, ¶17.  They also received quarterly and year-end bonuses "based on the performance of the store to which the Store Manager is assigned." *Id.*, p. 90, ¶18.

IV.    **The FLSA**

Congress enacted the FLSA on June 25, 1938, setting a maximum number of hours employees could work without receiving overtime compensation.   This measure and others comprised within the statute served to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202.  In urging Congress to pass the FLSA, President Roosevelt explained that the statute would ensure workers

> a fair day's pay for a fair day's work .... [A] self-supporting and self-respecting democracy can plead no . . . economic reason for chiseling workers' wages or stretching workers' hours.

H.R. REP. NO. 101-260, at 8-9 (Sept. 26, 1989) (reprinted in 1989 U.S.C.C.A.N. 696, 696-97).

The FLSA sets 40 hours as the standard workweek.  29 U.S.C. § 207(a).  Employees who work beyond this benchmark must receive an overtime premium.  *Id.*

## V.    **The FWW Method of Calculating Overtime Pay**

### A.    **General Background**

Typically the FLSA entitles employees to overtime pay equal to one-and-a-half times their "regular rate" for all hours worked over 40 in a given week. 29 U.S.C. § 207(a)(1).  This calculation remains straight-forward for employees paid by the hour who work established hours.

 The FWW pertains to situations where employees receive a weekly salary, rather than hourly pay, and have "hours of work which fluctuate from week to week." 29 C.F.R. § 778.114(a).  If employers can meet the stipulated prerequisites, the FWW permits them to pay overtime equal to "one-half" of an employee's "calculated regular rate" – a figure determined by "dividing the total number of worked" during a given week "into the weekly base salary."  APPENDIX, p. 90, ¶19.

### B.    **Effect in Reducing Rate of Overtime Pay**

Employers realize substantial savings by paying overtime under the FWW.  Consider an employee making $800-a-week who works 10 hours of overtime, or 50 total hours, during a given week.  Under the

-6-

default overtime standard, the employee's "regular rate" would equal $20-an-hour ($800-a-week ÷ 40 hours).  The employee would therefore become entitled to $300 in overtime pay for the week:

| REGULAR RATE | | OVERTIME | | | | O.T. PAY |
|---|---|---|---|---|---|---|
| $20-an-hour | x | 10 hours | x | 1.5 | = | **$300** |

Under the FWW, the employee's "calculated regular rate" for the week would equal $16-an-hour ($800-a-week ÷ 50 hours).  Computed at half-time, the employee's overtime pay would total $80:

| CALCULATED REGULAR RATE | | OVERTIME | | | | O.T. PAY |
|---|---|---|---|---|---|---|
| $16-an-hour | x | 10 hours | x | 0.5 | = | **$80** |

This total represents only slightly more than one-fourth of what the employee would receive at the standard overtime rate ($80 ÷ $300 = 26.67%).

The more overtime hours employees work under the FWW, the lower their "calculated regular rate" and their overtime rate of pay become:

| HRS | OT | CALCULATED REGULAR RATE | FWW OT RATE | DIFFERENCE FROM STANDARD OT |
|---|---|---|---|---|
| 45 | 5 | **$17.78**<br>$800/week ÷ 45 hrs | **$8.89**<br>$17.78 x 0.5 | **($21.11)**<br>$30.00 - $8.89 |
| 50 | 10 | **$16.00**<br>$800/week ÷ 50 hrs | **$8.00**<br>$16.00 x 0.5 | **($22.00)**<br>$30.00 - $8.00 |
| 60 | 20 | **$13.33**<br>$800/week ÷ 60 hrs. | **$6.67**<br>$13.33 x 0.5 | **($23.33)**<br>$30.00 - $6.67 |
| 70 | 30 | **$11.43**<br>$800/week ÷ 70 hrs. | **$5.72**<br>$11.43 x 0.5 | **($24.28)**<br>$30.00 - $5.72 |
| 75 | 35 | **$10.67**<br>$800/week ÷ 75 hrs. | **$5.34**<br>$10.67 x 0.5 | **($24.66)**<br>$30.00 - $5.34 |

C.      **"Fixed Salary" as Prerequisite**

The availability of the FWW depends upon certain specified conditions.  For instance, the employer and employees must have a "clear mutual understanding" that employees will receive a "fixed salary ... for the hours worked each workweek, whatever their number."  29 C.F.R. § 778.114(a).[1] RadioShack takes the position that it pays store

---

[1]  The FWW's availability ultimately turns upon four distinct elements:

1)  the employees hours must fluctuate from week to week;
2)  the employee must receive a fixed salary that does not vary with the number of hours worked;
3)  the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and
4)  the employer and employee must share a 'clear mutual understanding' that the employer will pay that fixed salary regardless of the number of hours worked.

*Sisson*, 2013 WL 945372 at *4, *citing* § 778.114(a).

-8-

managers like Wills a "fixed [weekly] salary," even though quarterly and year-end bonuses constitute a significant part of their compensation.

## VI.   The Proposed Change to § 778.114

On July 28, 2008, the United States Department of Labor issued a "Notice of Proposed Rulemaking and Request for Comment" that included a potential change to 28 C.F.R. § 778.114, the provision that defines the terms and requirements of the FWW.  In particular, the Department sought to add language that would have expressly validated RadioShack's practice of paying bonuses to store managers:

> Payment of overtime premiums and other ***bonus*** and non-overtime premium payments will not invalidate the ... [FWW] ....

73 FED. REG. 43654, 43670 (July 28, 2008) (emphasis added).  The Department explained that it was proposing this amendment to § 778.114 because the "payment of additional bonus supplements and premium payments to employees compensated under the ... [FWW] has presented challenges to both employers and the courts in applying the current regulations."  73 FED. REG. at 43662.

## VII.   The Final Rule

In the end, the proposed change to § 778.114 was not adopted.  On April 5, 2011, the Department issued its Final Rule pursuant to a "Notice

-9-

of Proposed Rulemaking and Request for Comment."   The Department

explained that the "comments" it received on the "substance of the

proposed revisions to" the FWW were "sharply divided," with "com-

menters representing employees strongly oppos[ing]" them.   76 FED.

REG. 18832, 18849 (Apr. 5, 2011).  These parties viewed the "receipt of

premium and bonus payments ... [as] inconsistent with payment of a

fixed salary." *Id.*  Pro-employee advocates also argued that the proposed

change would "encourage employers to schedule additional overtime for

employees" and "expand[ ]" the FWW's "use to a larger portion of the

workforce."  *Id.*

      The Department of Labor ultimately determined that while it

continued to believe that although "the payment of bonus and premium

payments" can benefit employees

> in other contexts, we have concluded that
> unless such payments are overtime premiums,
> they are incompatible with the ... [FWW]
> method of computing overtime under section
> 778.114.

76 FED. REG. at 18850.   The Department abandoned the prospective

change in order to prevent expansion of the FWW method "beyond the

scope of the current regulation."  *Id.*

## VIII.   **RadioShack's Failure to Change Overtime Policy**

The Department of Labor published the Final Rule on April 5, 2011.   It went into effect 30 days later. APPENDIX, p. 90, ¶21-¶23. RadioShack knew as of then that the Department considered it ineligible to use the FWW method in calculating overtime pay for store managers, given the inclusion of bonuses as part of their compensation packages. The company, however, chose to disregard the regulation and continued using the FWW, the Final Rule notwithstanding. *See id.*, pp. 90-91, ¶24. Wills has predicated his overtime claim upon RadioShack's continued use of the FWW even after the Final Rule went into effect.

## IX.   **Dismissal of the Lawsuit**

In dismissing Wills's First Amended Complaint, the district court rejected RadioShack's argument that the NYLL deviated from the FLSA with respect to overtime issues.  2013 WL 5951078 at *5-*6 (S.D.N.Y. Nov. 7, 2013).  The court held, however, that even though the Final Rule stated that bonuses "are incompatible with" the FWW, this unqualified assertion did not encompass the type of bonuses that RadioShack paid its store managers.  76 FED. REG. at 18850.

According to the district court, the Final Rule simply preserved the historical status quo with respect to the type of bonuses that negated the

-11-

existence of a "fixed salary" under § 778.114. These purportedly included only those that paid employees extra for working "premium hours" like "weekends, holidays, or nights." 2013 WL 5951078 at *9.

The district court drew a sharp distinction between this type of bonus and bonuses "based entirely on performance based metrics." 2013 WL 5951078 at *9. The RadioShack bonuses putatively fell in this latter category. The court stated that case law unanimously permitted the payment of performance bonuses under the FWW. *Id.* at *9-*10. In its view, the Department of Labor "likely ... did not have performance-based bonuses in mind when it formulated" its blanket prohibition against bonuses in the Final Rule. *Id.* at *13.

Further, the district court characterized § 778.114 as an "interpretative bulletin" rather than a regulation adopted pursuant to a statutory mandate. The court held that under no circumstances would the provision ever command more than a "measure of deference" from the courts. *Id.* In this regard, the district court opined that even had the Final Rule intended to ban "performance-based bonuses," the Department of Labor's "pronouncement" likely would not "have been effective to reverse the interpretation most consistent with the plain

-12-

language of" § 778.114, which in the court's view permits bonuses of this nature.  *Id.*

The district court also dismissed Wills's declaratory judgment claim regarding the collateral estoppel effect of *Sisson*.  The Sixth Circuit recently agreed to hear an appeal in that case.  *In re RadioShack Corp.*, No. 13-0304 (6th Cir. Mar. 5, 2014).  Wills is not appealing this aspect of the district court's ruling.

## SUMMARY OF ARGUMENT

The Court reviews *de novo* the dismissal of Wills's First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Applying this standard, the Court must reverse the district court's decision, for the following reasons:

Overtime rules under the NYLL derive explicitly from the FLSA. The NYLL's conception of the FWW therefore mirrors construction of this standard under federal law.

The FWW enables employers to pay progressively lower rates of compensation as they increase overtime hours assigned to employees. This anomaly creates a serious potential for abuse and runs contrary to the FLSA's goal of protecting workers  from "the evil[s] of 'overwork

-13-

... [and] underpay." *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942).

Pursuant to 29 C.F.R. § 778.114, employers can utilize the FWW only if they pay employees a "fixed salary" for all hours worked in any given week. The FLSA itself does not mention the FWW and therefore does not indicate whether payment of bonuses negates the existence of a "fixed salary." *Missel*, the FWW's jurisprudential progenitor, also does not resolve the issue.

Nevertheless, the most logical and appropriate construction of the FWW disallowed the payment of any type of bonus, including performance bonuses, even before the U.S. Department of Labor issued its Final Rule. The FWW without question prohibits bonuses based on the hours or days an employee works. Yet these same factors often determine the amount of performance bonuses. More significantly, performance bonuses by definition alter employees' "regular rate" of pay under 29 U.S.C. §207(e). In doing so, they negate the existence of the "fixed salary" required under § 778.114.

The Department of Labor invoked formal notice and rule-making procedures in adopting the Final Rule, which unequivocally states that bonuses "are incompatible with" the FWW. 76 FED. REG. at 18850.

-14-

Controlling principles of construction invalidate the district court's attempt to carve out an exception for performance bonuses. In fact, other courts addressing the issue have each concluded that the Final Rule means what it says in creating an across-the-board ban against all bonuses under the FWW. The Department of Labor avoided potential gray areas in eschewing an exception for performance bonuses, which would have  countenanced expanded use of the FWW and invited potential abuses by employers looking to skirt their obligations under the FLSA.

The Final Rule and its absolute prohibition against bonuses received full judicial deference in *Sisson*, which considered the identical RadioShack bonus program at issue in this case. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). In fact, when an agency interprets in its own regulations, as the Department of Labor does in the Final Rule, courts will defer to it absent patent defects or inconsistencies. At the very least, the Court should give substantial weight to the Final Rule under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), since it reflects the Department's informed position in forbidding all bonuses under the FWW.

-15-

## LAW AND ARGUMENT

I.   **The Court reviews the Plaintiff's complaint *de novo* in assessing the appropriateness of dismissal under Fed. R. Civ. P. 12(b)(6).**

Under Rule 12(b)(6), the Court reviews the "grant of a motion to dismiss *de novo*, accepting as true the complaint's factual allegations and drawing all inferences in the plaintiff's favor." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 358 (2d Cir. 2013). Dismissal becomes inappropriate if the pleading's contents, viewed in this light, set forth "a claim to relief that is plausible on its face." *Id.*

A claim "has facial plausibility" if it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group*, 709 F.3d 109, 120 (2d Cir. 2013) (quotation marks omitted). "Judicial experience" and "common sense" inform the application of this standard. *Nielsen v. Rabin*, __ F.3d __, No. 12-4313-PR, 2014 WL 552805 at *3 (2d Cir. Feb. 13, 2014).

II.  **The NYLL follows the FLSA with respect to overtime issues generally and the "fluctuating work week" in particular.**

A.   **The NYLL adopts the FLSA's definition and standards regarding overtime.**

The NYLL itself "does not contain any [explicit] provisions

-16-

governing overtime compensation." *Zutrau v. Ice Sys.*, 38 Misc. 3d

1235(A), 969 N.Y.S.2d 807, No. 37576-09, 2013 WL 1189213 at *4

(N.Y.S.Ct. Mar. 20, 2013).  The right to pay of this sort instead comes

from a regulation promulgated by the New York Department of Labor,

which expressly identifies the FLSA as its model:

> An employer shall pay an employee for
> overtime at a wage rate of one and one-half
> times the employee's regular rate in the
> ***manner and methods provided in*** and subject
> to the exemptions of the ... Fair Labor
> Standards Act ....

12 N.Y. COMP. CODES R. & REG. §142.2-2 (emphasis added).

Through this explicit language, the NYLL "incorporate[s] the

FLSA definition of overtime" and "adopts ... [the] same standard" for

assessing employees' right to such compensation.  *Nakahata v. New*

*York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 200 (2d Cir. 2013);

*see also Reiseck v. Universal Comm.*, 591 F.3d 101, 105 (2d Cir. 2010);

*Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012); *Thomas*

*v. Meyers Assoc.*, 39 Misc. 3d 1271(A), No. 651720/2011, 2013 WL

77483 at *4 (N.Y.S.Ct. Apr. 18, 2013).  The "same elements required"

to prove a federal overtime claim also establish the basis for recovery

under the state statute. *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323 ALC AJP, 2013 WL 1040052 at *3 (S.D.N.Y. Mar. 15, 2013).

B. **New York's conception of the fluctuating work week method comes exclusively from the FLSA.**

Since the NYLL does not expressly entitle employees to overtime pay absent the FLSA, the statute obviously does not independently recognize § 778.114 and the FWW method of calculating compensation. The rules and regulations adopted by the New York Department of Labor likewise do not mention the FWW.

Nevertheless, case law construing the NYLL does countenance the "fluctuating work week" in connection with employers' obligation to pay overtime. *See, e.g.*, *Anderson v. Ikon Office Solutions*, 38 A.D. 3d 317, 833 N.Y.S.2d 1 (2007). Its conception of the FWW by necessity derives from the FLSA. *See id.* (addressing potential NYLL overtime claim pursuant to FWW); *Pirri v. Manhattan Luxury Auto.* No. 115480/08, 2010 WL 1637085 (N.Y.S.Ct. Apr. 14, 2010) (granting leave to amend complaint to include NYLL overtime claim based upon FWW); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 590-92 (S.D.N.Y. 2013) (discussing FWW in assessing class action claims brought under NYLL); *Kadden v. VisuaLex LLC*, 910 F. Supp. 2d 523, 526 (S.D.N.Y. 2012)

-18-

(analyzing NYLL and FLSA under the "same standard" pursuant to parties' agreement in assessing FWW  and other overtime issues).  In light of these principles, federal authorities construing the FWW will determine whether the NYLL countenanced the overtime compensation that RadioShack paid to Wills and other store managers.

III.    **The FWW significantly favors employers and compromises employees' rights to overtime compensation.**

The FWW applies where employees receive a fixed weekly salary for all hours they are "called upon to work in a workweek, whether few or many." 29 C.F.R. § 778.114(a).  Certain courts characterize the FWW as an alternative "method of complying" with the FLSA's standard overtime regimen rather than some sort of "exemption" from it.  *See, e.g.*, *Caraballo v. City of Chicago*, __ F. Supp. 2d __, No. 07-cv-2807, 2013 WL 4552255 at *8 (N.D. Ill. Aug. 27, 2013).

In reality, however, the FWW represents a substantial "exception to the normal rights" of employees.  *See Dingwall v. Friedman Fisher Assoc.*, 3 F. Supp. 2d 215, 221 (N.D.N.Y. 1998); *see also Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 528,(S.D.N.Y. 2013); *Sisson*, 2013 WL 945372 at *3.  This method of computing overtime "favors employers significantly more than the traditional time-and-a-half

-19-

pay scheme." *Klein v. Torrey Point Group*, __ F. Supp. 2d __, No. 12 Civ. 1190 KPF, 2013 WL 5761401 at *14 (S.D.N.Y. Oct. 23, 2013).

If an employee receives a weekly salary of $800, he would have a regular rate of $20-an-hour and a standard time-and-a-half overtime rate of $30-an-hour. The following chart illustrates the overtime he would earn under the FWW:

| Wk | Hrs | OT | Base | Calculated Regular Rate | Overtime Pay | Total Compensation |
|---|---|---|---|---|---|---|
| 1 | 40 | 0 | $800 | **$20.00**<br>($800 ÷ 40 hrs) | **$0.00** | **$800.00** |
| 2 | 50 | 10 | $800 | **$16.00**<br>($800 ÷ 50 hrs) | **$80.00**<br>[10 hrs. x ($16.00/hr x 0.5)] | **$880.00**<br>($800.00 + $80.00) |
| 3 | 60 | 20 | $800 | **$13.33**<br>($800 ÷ 60 hrs) | **$133.30**<br>[20 hrs. x ($13.33/hr x 0.5)] | **$933.30**<br>($800.00 + $13.30) |
| 4 | 70 | 30 | $800 | **$11.43**<br>($800 ÷ 70 hrs) | **$171.45**<br>[30 hrs. x ($11.43/hr x 0.5)] | **$971.45**<br>($800.00 + $17.45) |

The employee's 60 hours of overtime over this four-week period would have earned him $1,800.00 under the standard rate.[2] The $384.75 paid under the FWW represents barely one-fifth of this total.[3]

This differential, however, does not fully capture just how extremely the "FWW method favors employers ...." *Klein*, 2013 WL 5761401 at *14. The chart indicates that the employee worked 10

---

[2] ($20.00/hr. x 1.5 x 60 hrs.) = $1800.00

[3] $384.75 ÷ $1,800.00 = 21.38%

-20-

additional hour of overtime in three successive weeks.  The incremental

increase in his weekly compensation for this extra time totaled

- $80 ($880.00 - $800.00) for Week Two, or **$8-AN-HOUR** for hours 41-50;

- $53.30 ($933.30 - $880.00) for Week Three, or **$5.33-AN-HOUR** for hours 51-60; and

- $38.15 ($971.45 - $933.30) for Week Four, or **$3.82-AN-HOUR** for hours 61 - 70.

The example shows how the FWW enables employers to pile on

overtime while paying a lower rate of compensation with each hour

added to their employees' schedules.  The longer employees work under

the FWW, the less they receive for it.

Nothing restricts how much overtime an employer can assign

under this setup, so long as employees' "average hourly earnings from"

their weekly salary remain above the statutory minimum wage.  29

C.F.R. § 718.114 (b). Under § 778.114, the aggregate number of hours

worked over a period of weeks do not have to average out to 40.   In fact,

some courts have permitted employers to avail themselves of the FWW

even when employees' hours never fall below 40 but instead only

fluctuate above this benchmark.  *Condo v. Sysco Corp.*, 1 F.3d 599, 602

(7th Cir. 1993); *Mitchell v. Abercrombie & Fitch*, 428 F. Supp. 2d 725, 735 (S.D. Ohio 2006); *but see Heder v. City of Two Rivers*, 295 F.3d 777. 779-80 (7th Cir. 2002) (FWW anticipates that employees' hours will fluctuate above and below 40 per week).

The FLSA serves to protect employees from "the evil[s] of overwork ... [and] underpay." *Missel*, 316 U.S. at 578; *see also Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981). The FWW undermines this fundamental purpose by enabling employers to impose longer working hours at reduced rates of compensation.

## IV. Neither the FLSA itself nor the *Missel* decision indicates whether payment of bonuses render the FWW unavailable.

The FLSA itself makes no mention of any aspect of the FWW. The concept instead has its genesis in *Missel*, which holds that the right to time-and-a-half overtime compensation extends to workers paid "by the week" along with those paid by the hour. *Missel*, 316 U.S. at 579. In reaching this conclusion, the Supreme Court held that for employees in this category who worked "variable or fluctuating hours," the regular rate used for computing overtime equaled the employees' base weekly salary divided by the number of hours worked during a given week. *Id.* at 580.

*Missel* expanded the coverage of the FLSA by preventing employers from using workers' weekly pay status and "fluctuating" schedules as grounds for sidestepping the obligation to pay overtime. 316 U.S. at 580. The Supreme Court did not anticipate the possibility that employers would turn this standard around and use it as a means of avoiding overtime at time-and-a-half. The Court did not address the distinction of paying time-and-a-half for hours worked over 40 and paying "half-time," the rate that effectively applies under the FWW. *O'Brien v. Town of Agawam*, 350 F.3d 279, 286-87 (1st Cir. 2003). Nor did the Supreme Court consider whether employees still received a "fixed weekly wage" for purposes of its ruling if their compensation included bonuses in general or performance bonuses in particular. 316 U.S. at 580.

## V.    Section 778.114 precluded payment of performance bonuses under the FWW even before the Department of Labor issued its Final Rule.

Even before the Department of Labor issued its Final Rule, the most logical and appropriate construction of the FWW disallowed the payment of any type of bonus – including performance bonuses. Under §778.114, an employee's "regular rate" of pay equals his "fixed" weekly salary divided by "the number of hours worked" in a given workweek.

-23-

29 C.F.R. § 778.114(a).  Any deviation in the  "regular rate" defeats the "fixed salary" requirement under § 778.114, since employees are no longer receiving a set amount for all of the hours that they work  *See, e.g.*, *O'Brien*, 350 F.3d at 288; *Ayers v. SGS Control Servs.*, No. 03 Civ. RMB, 2007 WL 646326 at *10 (S.D.N.Y. Feb. 27, 2007).

Section 778.114 therefore requires more than just a fixed weekly "minimum."  *O'Brien*, 350 F.3d at 288.  Employees must instead receive the identical amount each week, regardless of the number of hours they work.  29 C.F.R. § 778.114(a).

The decisions that enforced these principles before the Final Rule involved bonuses based upon the particular hours or days that employees worked, or the type of work they were performing.  *See, e.g.*, *O'Brien*, 350 F.3d at 288; *Brumley v. Camin Cargo Control*, No. 08-1798 (JLL), 2010 WL 1644066 at *5 (D.N.J. Apr. 22, 2010); *Ayers*, 2007 WL 646326 at *10; *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 889-90 (S.D. Tex. 2011).  In light of this extra compensation, employees were not receiving a "fixed [weekly] salary" for their labor.  29 C.F.R. § 778.114(a).

-24-

Yet the "regular rate" under the FLSA includes "*all remuneration* for employment paid to, or on behalf of, the employee," with certain specified exceptions.  29 U.S.C. § 207(e) (emphasis added).  This definition necessarily encompasses performance bonuses.  *Guadalupe v. Tri-State Employment, Mgmt & Consulting*, No. 10-cv-3840 NG CLP, 2013 WL 4547242 at *10 (E.D.N.Y. Aug. 28, 2013); *see also* 29 C.F.R. § 778.208 ("regular rate" must include all bonuses not specifically excluded under 29 U.S.C. § 207(e)).  Additional pay of this type disqualifies the weekly wage as a "fixed salary" in the same way and to the same extent as bonuses based on hours or days worked or similar factors.

Certain decisions cited by the district court have held that performance bonuses do not foreclose employers from using the FWW. One of them, however, stated this proposition summarily, without any explanation.  *Brantley*, 821 F. Supp. 2d at 890.  Another held that performance bonuses do not alter employees "'straight time pay' for work in a workweek," without considering their effect on employees' "regular rate."  *Switzer v. Wachovia Corp.*, No. H-11-1604, 2012 WL 3685978 at *3 (S.D. Tex. Aug. 24, 2012); *see also Ayers*, 2007 WL

646326 at *10 (equating "straight time pay" with employees' "regular rate").

A third case held that the inclusion of performance bonuses in employees' "regular rate" does not render § 778.114 inapplicable, since the provision "specifically contemplates that the 'regular rate of the employee will vary from week to week.'" *Soderberg v. Naturescape, Inc.*, No. 10-3429 (PAM/JJG), 2011 WL 11528148 at *5 (D. Minn. Nov. 3, 2011). That variability, however, results from differences in the number of hours an employee works each week, not from changes in his compensation. *See* 29 C.F.R. § 778.114(a). Hours fluctuate under the FWW, not (by definition) the "fixed salary."

The decisions cited by the district court cannot carry the day. Since performance bonuses alter employees' "regular rates," they negate the existence of a "fixed salary" and precluded use of the FWW even before the Department of Labor adopted the Final Rule.

## VI. Under the Final Rule, the payment of any type of bonus precludes the existence of a "fixed salary" for purposes of the FWW.

In the Final Rule, the Department of Labor absolutely prohibited the "payment of bonus and premium payments" under the FWW. 76

-26-

FED. REG. at 18850.   The Department created no exemption for performance-based bonuses.

### A. Fundamental rules of construction confirm that the Final Rule makes no exception for performance-based bonuses.

The district court erred in reading such an exception into § 778.114.  The interpretation of an administrative provision begins with its language.  *U.S. v. Banki*, 685 F.3d 99, 107 (2d Cir. 2012).  Courts must presume that the regulation "says what it means." *Wetzler v. FDIC*, 38 F.3d 69, 73 (2d Cir. 1994).[4]  Toward this end, courts afford words their ordinary and plain meaning unless doing so would lead to absurd results.  *Forest Watch v. U.S. Forest Serv.*, 410 F.3d 115, 118 (2d Cir. 2005).

Judicial construction focuses upon a provision's actual contents. *See In re 62 Cases*, 340 U.S. 593, 596 (1951) ("It is for us to ascertain – neither to add nor to subtract, neither to delete or to distort").  Courts "ordinarily resist reading [in] words or elements." *Bates v. U.S.*, 522 U.S.

---

[4]  *Wetzler* and several of the cases cited below address issues of ***statutory*** construction, as opposed to construction of a regulation or other administrative enactment.  This precedent is relevant, since the "basic tenets of statutory construction [also] apply to construction of regulations."    *Pennsylvania Fed. Of Sportsmen's Clubs v. Kempthorne*, 497 F.3d 337, 351 (3d Cir. 2007).

23, 29 (1997). They may not "engraft ... additions which [they] think ... logically might or should have [been] made." *U.S. v. Cooper Corp.*, 312 U.S. 600, 605 (1941). "[L]anguage does not morph into something more just because courts think it makes sense for it to do so." *Life Receivables Trust v. Syndicate 102*, 549 F.3d 210, 216 (2d Cir. 2008).

The Department of Labor could have distinguished between different types of bonuses when it classified this form of compensation as "incompatible" with the FWW. 76 FED. REG. at 18850. The Final Rule presumptively "says what it means" in establishing an absolute prohibition, without any exceptions. *Wetzler*, 38 F.3d at 73. The district court erred by reading unwritten "words and elements" into the Final Rule that permit employers to pay performance bonuses and still invoke § 778.114. *Bates*, 522 U.S. at 29.

It makes no difference whether the court believed that such a modification "logically might or should have [been] made." *Cooper*, 312 U.S. at 605. In excising performance bonuses from the operation of the Final Rule, the district court still "engraft[ed]" a caveat that has no support in the provision actually adopted by the Department of Labor. *Id.*

B.    **Other courts have held that the Final Rule forbids the payment of performance bonuses.**

Courts other than the district court have held that the Final Rule forbids the payment of performance bonuses under the FWW. *Sisson* addressed the identical RadioShack compensation program at issue in this case. The court determined that in adopting the Final Rule, the Department of Labor precluded the company from using the FWW, given the performance bonuses paid to its store managers. 2013 WL 9455372 at *6.

The district court cites *Switzer* as authority for the proposition that compensation of this kind has never foreclosed the availability of § 778.114. *Wills*, 2013 WL 5951078 at *10. In that case, however, the disputed conduct predated the Final Rule. The court explicitly noted that the Department of Labor "shifted course" when it adopted this provision, which classifies the bonuses as "inconsistent with the FWW payment method." *Switzer*, 2012 WL 36859878 at *4.

*Sisson* and *Switzer* confirm the conclusion that the rules of construction mandate. Under the Department of Labor's Final Rule, the payment of any type of bonus – including performance bonuses – renders the FWW unavailable.

-29-

VII. **The Department of Labor was fully justified in banning performance bonuses under the Final Rule.**

The Department of Labor has an obvious interest in restricting use of the FWW to situations where it legitimately applies, given the deep discount it provides to employers on overtime pay and its potentially oppressive consequences for employees. Recognizing an exception for performance bonuses would expand the FWW's availability and create potential grounds for abuse by employers. This unwarranted proliferation of the FWW could bestow an advantage over competitors by reducing labor costs to aberrational levels and create potential unrest among employees receiving far less than they legally should. The FLSA serves to prevent these very harms. *See Missel*, 316 U.S. at 576-78.

The Department was not changing the law in prohibiting performance bonuses under § 778.114. No controversy surrounds the necessity of including compensation of this kind in the calculation of employees' "regular rate." 29 U.S.C. § 207(e). This fact extinguishes any pretense of a "fixed salary."

Performance bonuses can, in fact, cause drastic swings in employees' pay from week-to-week. An employer may reward workers for their productivity on a weekly basis. Employees under this setup

-30-

would receive a different amount in each paycheck. The employer could hardly claim to pay a "fixed salary" is such situations, even if employees' compensation includes a base weekly amount.

Moreover, no substantive difference necessarily distinguishes between performance bonuses and bonuses based on hours or days worked. If, for example, employees work a relatively small number of hours, the corresponding effect on their productivity would depress the size of their performance bonuses. Working on particular days or at particular hours can also directly impact performance. Retail employees at a mall, rewarded for the store's sales volume during their assigned hours, would receive more for working at peak times than they would for working the graveyard shift.

Performance bonuses are "incompatible" with the FWW. 76 FED. REG. at 18850. The Department of Labor had good reason for not exempting performance bonuses from the Final Rule.

**VIII. The Court should defer to the Final Rule in holding that RadioShack's bonus program renders the FWW unavailable.**

    **A.** *Sisson* **holds that the Final Rule deserves deference under** *Chevron***.**

Under *Chevron*, a court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the

-31-

administrator of an agency." 467 U.S. at 844. Judicial deference of this sort becomes mandatory where Congress leaves "gaps" in a statute and expressly or implicitly authorizes an agency to fill them. *U.S. v. Mead Corp.*, 533 U.S. 218, 227-29 (2001). "Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in ... notice-and-comment rulemaking ...." *Id.* at 226-27.

The Department of Labor invoked this formal procedure before adopting the Final Rule. Its proposed change to § 778.114 remained outstanding for nearly three years after issuance of the "Notice of Proposed Rulemaking and Request for Comment" in July 2008.

The court in *Sisson* took these facts into account in holding that the Final Rule deserved deference under *Chevron*. 2013 WL 9455372 at *7. On this basis, the court held that RadioShack no longer qualified to use the FWW after the Final Rule went into effect, given its prohibition against bonuses and store managers' continued receipt of this form of compensation. *See also Condo*, 1 F. 3d at 603-06 (extending *Chevron* deference to § 778.114).

B.    **Courts generally defer to an agency's interpretation of its own regulations.**

The Final Rule commands judicial deference, given its function in

-32-

construing § 778.114. A court generally cannot "substitute its own independent interpretation of an agency's regulation for that of the agency." *Mullins v. City of New York*, 653 F.3d 104, 114 (2d Cir. 2011), *cert. denied*, 132 S.Ct. 1744 (2012). When an agency interprets its own regulation, courts defer to it unless it appears "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). Absent defects of this nature, the agency's interpretation must prevail, even if it is not "the only possible reading of a regulation – or even the best one to prevail." *Berlin v. Renaissance Rental Partners*, 723 F.3d 119, 125 (2d Cir. 2013), *quoting Decker v. Northwest Env'l Defense Ctr.*, 133 S.Ct. 1326, 1337 (2013).

The Department of Labor set forth the elements of the FWW in adopting § 778.114. The provision itself does not define what does or does not qualify as a "fixed salary" in this context. The Department partially answers this open question in the Final Rule by establishing that employees do not receive a "fixed salary" if bonuses constitute part of their compensation.

This proposition does not contradict the express terms of § 778.114. Nor is it "plainly erroneous," given its consonance with the regulation in placing rational limits on the availability of the FWW. It

-33-

makes no difference that there may be other and possibly better conceptions of what a "fixed salary" entails.  The Department of Labor's interpretation of § 778.114 embodied in the Final Rule deserves deference from this Court.

C.   **At the very least, the Court should extend** *Skidmore* **deference to the Final Rule.**

The district court cited case law that characterized § 778.114 as an "interpretive bulletin" worthy of limited judicial deference, at most, since it originally had not come into existence pursuant to "formal notice and comment rulemaking proceedings."  2013 WL 5951078 at *14.  The Department of Labor, however, issued § 778.114 in 1968.  33 FED. REG. 986 (Jan. 26, 1968). Since then, hundreds (if not thousands) of cases have enforced its terms in determining the overtime rights of salaried employees who work fluctuating hours.  Taken to its logical conclusion, the district court's position would mean that courts could freely disregard this "interpretative bulletin" and come up with their own formulation of what the FLSA requires in such situations.

Whatever its original status, § 778.114 did become the product of "formal notice and comment rulemaking proceedings" with adoption of

-34-

the Final Rule. 2013 WL 5951078 at *14. The classification as a "interpretive bulletin" should no longer apply. *Id.*

Even as an "interpretative bulletin," § 778.114 would still deserve deference under *Skidmore*. The Supreme Court decision holds that the weight afforded to an administrative interpretation depends upon its thoroughness, the "validity of its reasoning, and other "factors which give it power to persuade." 323 U.S. at 140. Courts apply this standard in light of the "specialized experience and broader investigations available to" administrative agencies, as well as "the value of uniformity in ... administrative and judicial understandings of what a national law requires." *Lopes v. Department of Social Serv.*, 696 F.3d 180, 187 (2d Cir. 2012), *quoting Mead*, 533 U.S. at 234.

"Congress explicitly granted the Secretary of Labor the duty of administering" the FLSA. *Condo*, 1 F.3d at 604. Since the Department of Labor is "the institution with the greatest body of experience" with the statute, its "informed judgment should have the power to persuade." *Hasan v. GPM Inv.*, 896 F. Supp. 2d 145, 149 (D. Conn. 2012) (quotation marks omitted).

The Department of Labor forbid all bonus payments under the FWW after taking comments from the public and pondering its proposed

changes to § 778.114 for nearly three years.  This determination creates a universal rule that employers can easily assess in deciding whether to avail themselves of this alternative overtime standard.  Preserving the FWW for employers that pay performance bonuses opens § 778.114 to broader use – a problematic result, given the FWW's susceptibility to abuse and its tendency to encourage more overtime at lower hourly rates. Nothing in *Missel* or the FLSA itself suggests that the standard time-and-a-half overtime rate should not apply when employees' compensation includes payments of this sort.

The Department of Labor has therefore taken a "persua[sive]" position in banning all bonuses under the Final Rule.  *Skidmore*, 323 U.S. at 140.  It drew upon its "specialized experience" and the unique body of  "information available" to it in concluding that while bonuses remain beneficial "in other contexts, ... they are incompatible with the ... [FWW] method of computing overtime."  76 FED. REG. at 18850.  Even if the Court does not defer to the Final Rule on other grounds, these considerations should bestow dispositive weight upon it under *Skidmore* in assessing RadioShack's right to invoke the FWW.

## <u>CONCLUSION</u>

The district court erred in dismissing Wills's First Amended Complaint. The Court should reverse this decision and remand the lawsuit for further proceedings.

Respectfully submitted,


Joshua R. Cohen
Joshua R. Cohen
*jcohen@crklaw.com*
Jason R. Bristol
*jbristol@crklaw.com*
Cohen Rosenthal & Kramer LLP
The Hoyt Block Building – Suite 400
700 West St. Clair Avenue
Cleveland, Ohio 44113
(216) 781-7956 (Telephone)
(216) 781-8061 (Facsimile)

Anthony J. Lazzaro
*Anthony@lazzarolawfirm.com*
The Lazzaro Law Firm, LLC
920 Rockefeller Building
614 West Superior Avenue
Cleveland, Ohio 44113
(216) 696-5000 (Telephone)
(216) 696-7005 (Facsimile)

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C), I certify that this Brief contains **7,094** words and therefore complies with the type-volume limitation applicable to Briefs of the Appellant.

<u>Joshua R. Cohen                    </u>
Joshua R. Cohen

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of this Brief has been served this **3<u>rd</u>** day of

April, 2014 by e-mail upon the following:

Charles A. Bird
*cbird@mckennalong.com*
McKenna Long & Aldridge, LLP
600 W. Broadway – Suite 2600
San Diego, California 92101

James S. McNeill
*jmcneill@mckennalong.com*
McKenna Long & Aldridge, LLP
4435 Eastgate Mall, Ste. 400
San Diego, CA 92121

John R. Oh (JO 7530)
*joh@mckennalong.com*
230 Park Avenue, 17th Floor
New York, New York 10169

Rachel Goldberg
*goldberg.rachel@dol.gov*
U.S. Department of Labor
200 Constitution Avenue N.W.
Room N2716
Washington D.C. 20210

Joshua R. Cohen
Joshua R. Cohen

-39-