# No. 13-4661

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————————

JAIME WILLS,
on behalf of himself and all others similarly situated

*Plaintiff-Appellant,*

v.

RADIOSHACK CORPORATION

*Defendant-Appellee.*

————————————

Appeal From The United States District Court,
Southern District of New York, Case No. 13-cv-2733

————————————

### APPELLEE'S ANSWER BRIEF

————————————

McKENNA LONG & ALDRIDGE LLP
Charles A. Bird
Jim McNeill
600 West Broadway, Suite 2600
San Diego, California 92101-3372
Telephone: 619.236.1414
Facsimile: 619.232.8311

Attorneys for RadioShack Corporation

## CORPORATE DISCLOSURE STATEMENT

RadioShack Corporation is a publicly traded corporation. No other corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...........................i

TABLE OF CONTENTS .........................................................ii

TABLE OF AUTHORITIES ....................................................iv

STATEMENT OF THE CASE ................................................. 1

    A.   Nature of the case ................................................. 1

    B.   Proceedings and disposition below ...................... 5

STATEMENT OF FACTS ....................................................... 7

SUMMARY OF ARGUMENT ................................................. 8

ARGUMENT ........................................................................ 10

I.    Matters not in Dispute ................................................. 10

II.   The Court Should Affirm under § 207 and *Overnight* Without Reaching the Meaning or Effect of the Final Rule ................................................. 10

III.  The Final Rule Did Not Affect the Lawfulness of Calculating Overtime Using the FWW Method when the Employer Pays Nondiscretionary Bonuses Based on Financial Performance ................. 16

    A.   Introduction......................................................... 17

    B.   Regulatory landscape: the DOL facilitates payment of bonuses by employers using the FWW method....................................................... 18

    C.   Legal landscape before the Final Rule ...............20

    D.   Full textual analysis of the NPRM and the Final Rule demonstrates the DOL's Final Rule comments do not address performance-based bonuses.......................................................24

        1.   The NPRM..............................................24

        2.   The Final Rule .........................................28

    E.   Summing up .........................................................36

IV.   If Plaintiff's Interpretation Were Right, the Final
      Rule Would Not Be Entitled to Any Weight ................ 37

     A.   *Chevron* deference could not apply ..................... 37

     B.   The Final Rule could not curtail use of the
          FWW method because the NPRM did not
          give notice of that possibility ............................. 39

     C.   Interpreted as plaintiff proposes, the Final
          Rule would lack any power to persuade ............ 41

CONCLUSION ....................................................................... 43

CERTIFICATE OF COMPLIANCE ..................................... 44

ADDENDUM ......................................................................... 45

     A.   Relevant statutes ................................................ 46

          29 U.S.C. § 207 .................................................. 46

     B.   Regulation ........................................................... 50

          29 C.F.R. § 778.114 ............................................ 50

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adeva v. Intertek USA, Inc.,*
    Civ. A. 09-1096 (SRC), 2010 U.S. Dist. LEXIS
    1963, 2010 WL 97991 (D.N.J. Jan. 11, 2010) ........21, 33

*Aiken v. Cnty. of Hampton, S.C.,*
    977 F.Supp. 390 (D.S.C. 1997), *aff'd sub nom.,*
    172 F.3d 43 (4th Cir. 1998) .........................................20

*Allina Health Services v. Sibelius,*
    746 F.3d 1102 (D.C. Cir. 2014) .............................39, 40

*Auer v. Robbins,*
    519 U.S. 452 (1997) ......................................................38

*Ayers v. SGS Control Servs., Inc.,*
    Nos. 03 Civ. 9078 (RMB), et al., 2007 U.S. Dist.
    LEXIS 76539, 2007 WL 3171342 (S.D.N.Y. Oct. 9,
    2007) ....................................................................20, 33

*Berlin v. Renaissance Rental Partners, LLC,*
    723 F.3d 119 (2d Cir. 2013).........................................38

*Brantley v. Inspectorate Am. Corp.,*
    821 F.Supp.2d 879 (S.D. Tex. 2011)......................21, 22

*Brumley v. Camin Cargo Control, Inc.,*
    No. 08 Civ 1798 (JLL), 2010 U.S. Dist. LEXIS
    144198, 2010 WL 1644066 (D.N.J. Apr. 22, 2010) ......21

*Caraballo v. City of Chicago,*
    969 F.3d 1008 (N.D. Ill. 2013).....................................12

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) ...............................................37, 38

*Christensen v. Harris Cnty.*,
  529 U.S. 576 (2000) ......................................................42

*Christopher v. SmithKline Beecham Corp.*,
  132 S.Ct. 2156 (2012) ..................................................42

*Condo v. Sysco Corp.*,
  1 F.3d 599 (7th Cir. 1993) ...........................................38

*Decker v. Northwest Envtl. Def. Ctr.*,
  133 S.Ct. 1326 (2013) ..................................................38

*Dooley v. Liberty Mut. Ins. Co.*,
  369 F.Supp.2d 81
  (D. Mass. 2005) ....................................................20, 33

*Freeman v. Quicken Loans, Inc.*,
  132 S.Ct. 2034 (2012) ..................................................42

*Lance v. The Scotts Co.*,
  No. 04 Civ. 5720 (AK), 2005 U.S. Dist. LEXIS
  14949, 2005 WL 1785315 (N.D. Ill. July 21, 2005)......21

*Long Island Care Home, Ltd. v. Coke*,
  551 U.S. 158 (2007) ......................................................40

*Martinez v. Hilton Hotels Corp.*,
  930 F.Supp.2d 508 (S.D.N.Y. 2013) .............................37

*Nat'l Black Media Coalition v. FCC*,
  791 F.2d 1016 (2d Cir. 1986).......................................40

*O'Brien v. Town of Agawam*,
  350 F.3d 279 (1st Cir. 2003)...................... 20, 26, 33, 37

*Overnight Motor Transp. Co. v. Missel*,
  316 U.S. 572 (1942)1, 2, 4, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 38

*Samson v. Apollo Resources, Inc.*,
  242 F.3d 629 (5th Cir. 2001) .......................................12

*Smith v. Frac Tech Services, LLC*,
    No. No. 4:09CV00679 JLH, 2011 U.S. Dist.
    LEXIS 64079, 2011 WL 11528539 (E.D. Ark.
    June 15, 2011) .............................................................. 38

*Soderberg v. Naturescape, Inc.*,
    No. 10 Civ. 3429, 2011 U.S. Dist. LEXIS 156235
    (D. Minn. Nov. 3, 2011) ............................................... 22

*Stein v. Guardsmark, LLC*,
    No. 12 Civ 4739 (JPO) 2013 U.S. Dist. LEXIS
    103131, 2013 WL 3809463 (S.D.N.Y. July 23,
    2013) ............................................................................. 38

*Switzer v. Wachovia Corp.*,
    Civ. A. No. H-11-1604 (NFA), 2012 U.S. Dist.
    LEXIS 120582, 2012 WL 3685978 (S.D. Tex. Aug.
    24, 2012) ....................................................................... 22

*West v. Verizon Servs. Corp.*,
    No. 08 Civ 1325 (VMHC), 2011 U.S. Dist. LEXIS
    5952, 2011 WL 208314 (M.D. Fla. Jan. 21, 2011) ....... 23

*Wos v. E.M.A*,
    133 S.Ct. 1391 (2013) .................................................. 39

## STATUTES

29 U.S.C. § 207 ............. 1, 2, 4, 9, 10, 11, 12, 13, 14, 15, 16, 19

Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et
    seq.* ................................................................................. 1

New York Labor Law, Article 6 ............................................... 6

New York Labor Law, Article 19, § 142-2.2 ............................ 1

Oct. 26, 1949, ch. 736, § 7, 63 Stat. 912. ............................... 15

Pub. L. 106-202 § 2 ................................................................ 16

Pub. L. 89-601 § 204(d)(1) ..................................................... 16

## OTHER AUTHORITIES

29 C.F.R. § 778.109 .............................................................. 2, 39

29 C.F.R. § 778.113 .................................................................. 6

29 C.F.R. § 778.114 ................................................................
.......... 2, 3, 6, 10, 17, 18, 20, 21, 23-29, 32, 34, 37, 38, 42

29 C.F.R. § 778.119 ................................................. 14, 35, 42

29 C.F.R. § 778.120 ................................................................ 14

29 C.F.R. § 778.208 ..................................................... 35, 42

29 C.F.R. § 778.209 ................................................. 19, 35, 42

33 Fed. Reg. 986 ....................................................................... 2

73 Fed. Reg. 43654 .................................... 3, 17, 24, 25, 26, 41

76 Fed. Reg. 18832 . 3, 17, 24, 28, 29, 30, 31, 32, 34, 35, 41, 42

Fed. R. Civ. P. 12(b)(6) ......................................................... 6

U.S.C.A. Title 29 § 186 to § 206, 2013 cumulative
   annual supplement, *foll*. § 207 (West 2013) ............... 16

U.S.C.A. Title 29 § 186 to § 206, *foll*. § 203 (West 1998)...... 15

U.S.C.A. Title 29 § 207 to § 216(b), *foll*. § 207 (West
   1998) .......................................................................... 15

## STATEMENT OF THE CASE

### A.    Nature of the case

Under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, an employer must compensate a nonexempt employee for time over 40 hours worked in any week at "a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a) ("§ 207"). New York Labor Law, Article 19, § 142-2.2 incorporates § 207.

The United States Supreme Court long ago approved what has become known as the fluctuating work week ("FWW") method of calculating overtime pay under § 207. *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 (1942) ("*Overnight*"). The FWW method is a means to establish the "regular rate" for a given week when a nonexempt employee is paid a fixed weekly salary regardless of hours worked, and the employee's work hours fluctuate from week to week. Under the FWW method, the employer calculates the "regular rate" for a given week by dividing the fixed salary by the actual number of hours worked in the

1

week. Thus, a fixed-salary employee's "regular rate" for

§ 207 purposes fluctuates with the hours the employee works

each workweek. *Id.* The regular rate functions as the "one"

in the statute's "one and one-half times." *Id.* Then, any

required overtime premium is paid at the statutory "one-

half" of the regular rate. *Id.*

     In 1968, the Department of Labor ("DOL") issued an

interpretive rule, 29 C.F.R. § 778.114 ("§ 778.114"), as an

example of how to calculate the regular rate of pay for an

employee (i) whose working hours vary from week to week

and (ii) who is paid a fixed salary for all hours worked in a

week, whether few or many. 33 Fed. Reg. 986, Jan. 26, 1968;

*see* 29 C.F.R. § 778.109 (identifying the rule set that included

§ 778.114 as providing "some examples of the proper method

of determining the regular rate of pay," not being a

regulation with the force of a statute).

     Courts have consistently held that an employer pays a

fixed salary for all hours worked in a week even if an

employee's total compensation includes commissions or

bonuses that are based on financial performance. *See* cases cited *post* at 21-23. In contrast, an employer who pays bonuses for employees to work undesirable or extra hours does not pay a fixed salary for all hours worked in a week. *See* cases cited *id.* at 20-21.

In 2008, the DOL published a notice of proposed rulemaking ("NPRM") to modify § 778.114. 73 Fed. Reg. 43654, 43669-70. Among other things, the proposed rule would have clarified that employers may use the FWW method even if they paid employees bonuses based on hours worked. *Id.* at 43670. In its Final Rule, on April 5, 2011, the DOL did not adopt the proposed rule and left § 778.114 unchanged. 76 Fed. Reg. 18832-18833. Plaintiff contends that language in the Final Rule indicates that the DOL disapproves of using the FWW method of calculating overtime pay when employees are paid bonuses based on the financial performance of a business or a business unit like a store. *See id.* at 18848.

RadioShack uses a FWW compensation plan for its nonexempt store managers in all states except California. Appen. 19. RadioShack also pays store managers nondiscretionary periodic bonuses based on the financial performance of the store, not on the hours worked by the manager. Appen. 19-22. Plaintiff contends that the bonuses cause RadioShack's implementation of the FWW method to violate § 207.

While plaintiff's complaint alleges that the bonuses cause the violation, the thrust of plaintiff's argument is not bonuses at all. Rather, plaintiff contends the FWW itself abuses employees because their hourly rates go down as they work more overtime. The Supreme Court found no merit in this argument and no such abuse. "This is not an argument, however, against this method of determining the regular rate of employment for the week in question." *Overnight*, 316 U.S. at 580.

The District Court correctly dismissed plaintiff's suit because § 207 and *Overnight*, 316 U.S. 572, establish that

paying periodic performance-based bonuses unrelated to hours worked is not inconsistent with compensating overtime at a 50% premium when paying an employee a fixed salary for all hours worked in a week, whether few or many. If resort to the DOL's interpretive regulations were necessary, those regulations are consistent with RadioShack's FWW compensation plan. The Final Rule did not impair that consistency. Further, if the Final Rule could be interpreted as plaintiff argues, it would not be entitled to any weight in the Judicial Branch.

### B.    Proceedings and disposition below

Plaintiff filed a class action complaint against RadioShack. Appen. 9-18. The complaint identified and attached RadioShack's "'Non-Exempt Store Manager Compensation Plan' for 'Non-California Stores' ('Compensation Plan')." Appen. 11, 19-22. RadioShack moved to dismiss. Appen. 53-86.

Pursuant to a status conference order, Appen. 3-4, plaintiff filed a first amended complaint ("FAC"), Appen. 87-

98, again identifying and attaching the Compensation Plan.
Appen. 89. The FAC alleges plaintiff and similarly-situated
employees were nonexempt RadioShack New York store
managers who were compensated under RadioShack's
Compensation Plan. Appen. 87-91. Plaintiff alleges that after
the effective date of the Final Rule, the Compensation Plan
violates the New York Labor Law because RadioShack pays
quarterly and year-end bonuses to its nonexempt store
managers based on the financial performance of the store.
Appen. 88-90. The first count of the FAC claims back
overtime compensation under Article 6 of the New York
Labor Law. Appen. 93. Allegedly, the overtime pay should be
calculated under 29 C.F.R. § 778.113 instead of under the
FWW method described in § 778.114. *Id.* Counts two and
three are for the same relief phrased as a declaration.
Appen. 94-95.

RadioShack moved under Fed. R. Civ. P. 12(b)(6) to
dismiss the FAC. Appen. 99-134. Plaintiff opposed the
motion. Appen. 135-184.

The District Court granted the motion in a lengthy, reasoned opinion. Appen. 249-281.

## STATEMENT OF FACTS

RadioShack "operates thousands of electronics retail stores nationwide." Appen. 89. It employed plaintiff as a nonexempt store manager in Tonawanda, New York. *Id.* RadioShack paid plaintiff and other similarly situated nonexempt store managers according to the Compensation Plan. *Id.* That is, plaintiff received a base salary for all hours worked each workweek and overtime compensation calculated under the FWW method. Appen. 90. Inferentially, plaintiff received quarterly and year-end bonuses based on store performance under the Compensation Plan. *Id.*

Under the Compensation Plan, RadioShack pays nonexempt store managers a weekly base salary for all hours worked each week, whether over or under 40. Appen. 19, 90. In addition, RadioShack pays an overtime premium equal to 50% of the regular rate for all hours worked over 40 in a workweek. It calculates the premium by dividing the base salary by all hours worked in the workweek, thus

7

determining the regular rate for that week, then dividing the regular rate by two to determine the overtime premium rate. *Id.* Further, nonexempt store managers "may be eligible to receive a bonus based on the performance of the store to which the Store Manager is assigned." Appen. 19. The potential bonus is a percentage of the manager's base salary, determined quarterly and then annually by fixed formulas exclusively dependent on the performance of the manager's store compared to the store's sales plan. Appen. 19-22.

## SUMMARY OF ARGUMENT

1. The Supreme Court held that the FWW calculation is the natural way to determine the overtime pay of an employee who is paid a fixed salary for all hours worked in a workweek. *Overnight*, 316 U.S. 572. That decision derives directly from the text of the statute. Under *Overnight*, the FWW method is available when employer and employee have a "contract for a fixed weekly wage for regular contract hours." *Overnight*, 316 U.S. at 580. RadioShack's payment of periodic performance-based bonuses under the Compensation Plan does not cause variation in the fixed

8

weekly salary for all hours worked. Therefore, under the statute and *Overnight*, RadioShack properly uses the FWW method regardless of any later opinions issued by the DOL. *See post*, at 10-16.

2. Plaintiff misinterprets the Final Rule. In judicial decisions and DOL interpretive regulations, paying performance-based bonuses has never created conflict with using the FWW method to calculate overtime pay. Read as a whole and in its historical context, the Final Rule does not create a new controversy. It does not speak to performance-based bonuses at all. *See post*, at 16-37.

3. If the Final Rule could be interpreted as plaintiff argues, it would not be entitled to any weight in a federal appellate court's decision-making process. Such an interpretation contradicts the Supreme Court's interpretation of § 207, would derive from a process lacking notice to interested parties and lacking actual participation by interested parties, and would be a mere opinion

9

unsupported by any analysis of relevant policy or legal authority. *See post*, at 37-42.

**ARGUMENT**

## I.    Matters not in Dispute

RadioShack does not dispute plaintiff's jurisdictional statement.

RadioShack does not dispute that as to the subject matter of this appeal, the New York Court of Appeals would apply the FWW method under the New York Labor Law as the FWW method is defined and interpreted by federal courts.

RadioShack does not dispute that the standard of review is *de novo*.

## II.    The Court Should Affirm under § 207 and *Overnight* Without Reaching the Meaning or Effect of the Final Rule

Although the briefing and decision in the District Court focused on the Final Rule and § 778.114, the foundation of this case is § 207 itself. Understanding the statute and *Overnight*, 316 U.S. 572, by themselves, resolves

10

this appeal: there is nothing inconsistent between paying performance-based bonuses and using the FWW method to calculate overtime pay.

Under § 207(a)(1), an employee must "receive[] compensation for his employment in excess of [40 hours in a workweek] at a rate not less than one and one-half times the regular rate at which he is employed." In *Overnight*, the Supreme Court held that the FWW calculation is the normal way to determine the regular rate of an employee who is paid a fixed salary regardless of the number of hours worked. *Overnight*, 316 U.S. at 580. "No problem is presented in assimilating the computation of overtime for employees under contract for a fixed weekly wage for regular contract hours which are the actual hours worked, to similar computations for employees on hourly rates." *Id.* That assimilation is dividing the salary by the hours worked separately for each workweek. *Id.* at 580 n.15. "As that rate is on an hourly basis, it is regular in the statutory sense inasmuch as the rate per hour does not vary for the entire

week, though week by week the regular rate varies with the number of hours worked." *Id.* at 580.

To the objection that the rate fell with longer hours worked, the court responded, "[t]his is not an argument, however, against this method of determining the regular rate of employment for the week in question." *Id.* In a footnote, the Supreme Court observed that the DOL approved the substance of the court's interpretation of § 207 in a bulletin that carried "persuasiveness" but was not a regulation under statutory authority. *Id.* at 580 n.17. Plaintiff contradicts the Supreme Court in characterizing the FWW method as an exemption or exception,[1] *see* AOB at 19, in stating that the FWW originated in *Overnight*, *see* AOB at 22, and that *Overnight* "expanded the coverage of the FLSA . . .," *see* AOB at 23.

---

[1] One of plaintiff's authorities explicitly states that the FWW "is one method of complying with the FLSA's overtime requirements, not an exemption to it." *Caraballo v. City of Chicago*, 969 F.3d 1008, 1019 (N.D. Ill. 2013), citing *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir.2001).

Perhaps plaintiff's most disingenuous statement about *Overnight* is the "Supreme Court did not anticipate" sentence. *See* AOB at 23. Employers do not and cannot use the FWW method to avoid "overtime at time-and-a-half." Employers pay the "time" as part of the fixed salary and the "half" based on the fluctuating regular rate determined arithmetically on a weekly basis. Nothing has changed since 1942.

The dispositive refinement of the issue on appeal is whether paying periodic bonuses is inconsistent with the employer and employee's having a "contract for a fixed weekly wage for regular contract hours. . . ." *Overnight*, 316 U.S. at 580. It is not. To be sure, when—as here—the employer pays a performance-based periodic bonus under contract, § 207(e) requires[2] it to look back over the period for which the bonus is paid for any overtime hours and to pay

---

[2] "As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee. . . ." § 207(e). There is no exception for performance bonuses in subsections (e)(1) through (e)(8).

additional overtime compensation for those weeks.[3] But that only increases the employee's premium pay for overtime hours worked. The fact that a portion of the employee's total compensation for any particular week is, by agreement, determined retroactively, does not deprive the weekly salary of its fixed nature. The bonus determination does not make the salary variable by any factor related to time or days worked. Plaintiff's repeated incantation to the contrary does not change the fixed nature of the weekly salary. Although plaintiff fails to face it, the logic of his zeal would disqualify an employer who pays commissions from using the FWW method, a result contrary to the DOL's understanding of *Overnight* and § 207. *See* 29 C.F.R. §§ 778.119, 778.120.

No DOL opinion is required for § 207(a) and *Overnight*, 316 U.S. 572, to determine conclusively that an employer does not disqualify itself from using the FWW method by contracting to pay performance-based, nondiscretionary

---

[3] The record does not affirmatively state that RadioShack performs this look-back. Plaintiff could, but did not, allege to the contrary. Counsel represents that plaintiff could not make such an allegation in good faith.

14

bonuses. Nothing in § 207, and particularly the lengthy subsection (e) exceptions, suggests that Congress meant to regulate performance-based bonuses. Why should it? Bonuses paid without respect to time worked could only benefit employees and could not impair Congress's goal to give employers incentives to reduce unemployment by hiring more workers rather than working a smaller crew for longer hours. *See Overnight*, 316 U.S. at 578. Further, Congress contemplated little DOL involvement with the substance of § 207. The only subsection that directs the DOL to adopt a regulation is (e)(3), adopted as (d)(3) in 1949. Oct. 26, 1949, ch. 736, § 7, 63 Stat. 912. It does not relate to the FWW method or anything else in *Overnight*.[4]

---

[4] Amendments to the FLSA in 1961, 1966, 1977, and 1985 expressly empowered the Secretary of Labor to adopt regulations implementing the amendments. U.S.C.A. Title 29 § 186 to § 206, *foll*. § 203 (West 1998) at 318-19. None of the amendments modified the text of § 207(a) or (e) in a manner related to the FWW method. U.S.C.A. Title 29 § 207 to § 216(b), *foll*. § 207 (West 1998) at 13-15. Rather, the amendments related to the length of the maximum workweek. *Id.* Amendments to § 207 in 2000 expressly empowered the Secretary of Labor to adopt implementing regulations, but there was no implication for the FWW

In sum, § 207 and *Overnight*, 316 U.S. 572, provide the answer to whether paying financial-performance bonuses unrelated to hours worked disqualifies an employer from using the FWW method of calculating an employee's regular rate. There is no such prohibition, and nothing in the statute renders RadioShack's FWW Compensation Plan inconsistent with § 207.

## III.   The Final Rule Did Not Affect the Lawfulness of Calculating Overtime Using the FWW Method when the Employer Pays Nondiscretionary Bonuses Based on Financial Performance

The District Court carefully analyzed the Final Rule and reached the opposite conclusion argued by plaintiff. Plaintiff barely responds to the District Court's analysis and instead files what might be called a policy brief. It is not really even that; plaintiff's position is that the FWW method

method. U.S.C.A. Title 29 § 186 to § 206, 2013 cumulative annual supplement, *foll*. § 207 (West 2013) at 2-3.) Textual analysis demonstrates that the amendments to subsections (e)(6) and (7) were not substantive. *Compare* Pub. L. 89-601 § 204(d)(1) [last prior amendment to subsection (e)] with Pub. L. 106-202 § 2 [amendments].

16

is bad and should be shut down in every imaginable way. So much for the Supreme Court's recognition of the FWW calculation as the obvious way to determine the regular rate of an employee who works variable hours and who is paid a fixed salary regardless of the number of hours worked. *Overnight*, 316 U.S. at 580.

RadioShack will now further elucidate why the District Court's research, reasoning, and result are correct.

## A.   Introduction

The Final Rule's discussion of bonuses is best understood from its context, *i.e.*, that the DOL was explaining why it did not amend § 778.114 to allow employers to use the FWW method when paying bonuses based on hours worked. 73 Fed. Reg. 43654, 43669-70; 76 Fed. Reg. 18832-18833, 18848. There was no call for the DOL to address bonuses based on the financial performance of an employer, or a unit of an employer's business, unrelated to hours worked. The context bears out that the

17

NPRM and the Final Rule comments simply do not address financial-performance bonuses.

**B.   Regulatory landscape: the DOL facilitates payment of bonuses by employers using the FWW method**

Under § 778.114, employers may use the FWW method if all of the following five conditions are met:

(1) the employee's hours fluctuate from week to week;

(2) the employee receives the same weekly salary regardless of the number of hours the employee works during the week, except for legally required overtime compensation;

(3) the fixed amount provides compensation at a regular rate not less than the legal minimum wage;

(4) the employer and employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and

18

(5) the employee receives a 50% overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during the week.

There is no dispute that the Compensation Plan satisfies requirements (1), (3), (4), and (5). Plaintiff attacks the second element: whether periodic performance-based bonuses unrelated to time worked preclude a finding that the store managers receive a fixed weekly salary.

Separately, the DOL's illustrative regulations establish that the DOL has long understood that employers pay bonuses unrelated to hours worked—and that the DOL has never considered such bonuses to impair using the FWW method to calculate overtime pay. *See, e.g.*, 29 C.F.R. 778.208 (recognizing that employers pay bonuses and observing that they must be included in the regular rate under § 207(e)); 29 C.F.R. § 778.209 (for bonuses paid for a period longer than a workweek, (i) allowing an employer to await determination of the amount before paying overtime compensation based on the bonus and (ii) discussing how to

allocate such bonuses when the amount is determined); *see also* 29 C.F.R. § 778.120 (overtime pay look-backs for commissions not allocable to a particular workweek).

## C.    Legal landscape before the Final Rule

The NPRM proposed illustrations that would have diverged from a host of court decisions which, with near unanimity, hold that paying an employee a time-based bonus or premium, e.g., extra pay for holiday, weekend, or night work, offended § 778.114's requirement of a "fixed salary" as straight time compensation for all hours worked. *See, e.g., O'Brien v. Town of Agawam*, 350 F.3d 279, 287 (1st Cir. 2003); *Ayers v. SGS Control Servs., Inc.,* Nos. 03 Civ. 9078 (RMB), et al., 2007 U.S. Dist. LEXIS 76539, 2007 WL 3171342, at *9 (S.D.N.Y. Oct. 9, 2007); *Dooley v. Liberty Mut. Ins. Co.*, 369 F.Supp.2d 81 (D. Mass. 2005); *but see Aiken v. Cnty. of Hampton, S.C.*, 977 F.Supp. 390 (D.S.C. 1997), *aff'd sub nom.,* 172 F.3d 43 (4th Cir. 1998).

These decisions continued in the same vein after the NPRM and before the Final Rule. *Brantley v. Inspectorate*

*Am. Corp.*, 821 F.Supp.2d 879, 890 (S.D. Tex. 2011); *Brumley v. Camin Cargo Control, Inc.*, No. 08 Civ. 1798 (JLL), 2010 U.S. Dist. LEXIS 144198, 2010 WL 1644066 (D.N.J. Apr. 22, 2010); *Adeva v. Intertek USA, Inc.,* Civ. A. 09-1096 (SRC), 2010 U.S. Dist. LEXIS 1963, 2010 WL 97991 (D.N.J. Jan. 11, 2010). Adoption of the proposed rule would have had substantial legal consequences.

In contrast, courts that have considered the payment of performance-based bonuses unrelated to time worked have held that those bonuses do not violate § 778.114's requirement of a "fixed salary . . . for the hours worked each workweek." Each held, or stated, that, so long as the bonuses and premiums were not tied to the number of hours worked by the employee, they were consistent with the fixed salary requirement. *See, e.g.*, *Lance v. The Scotts Co.*, No. 04 Civ. 5720 (AK), 2005 U.S. Dist. LEXIS 14949, 2005 WL 1785315 (N.D. Ill. July 21, 2005) (including commissions in an employee's salary base did not violate the FWW method's requirement of a fixed weekly salary for all hours worked);

*Brantley*, *supra*, 821 F.Supp.2d at 890 (time-based bonuses distinguished from "sales-based or production-based bonuses and commissions").

These decisions continued after the Final Rule, as applied to employment periods before the Final Rule. *Soderberg v. Naturescape, Inc.*, No. 10 Civ. 3429, 2011 U.S. Dist. LEXIS 156235 *11-13 (D. Minn. Nov. 3, 2011) (bonuses tied to objective performance metrics for branch managers and lawn specialists did not bar employer from using the FWW method to calculate these workers' overtime pay; "bonuses based on criteria untethered to the hours . . . worked," and instead based on "individual and collective performance," result in the employee being "paid the same weekly salary regardless of the number of hours worked"); *Switzer v. Wachovia Corp.*, Civ. A. No. H-11-1604 (NFA), 2012 U.S. Dist. LEXIS 120582 *3-5, 2012 WL 3685978 (S.D. Tex. Aug. 24, 2012) (performance bonuses based on criteria such as sales growth, portfolio growth, and customer service); *cf. West v. Verizon Servs. Corp.*, No. 08 Civ. 1325

(VMHC), 2011 U.S. Dist. LEXIS 5952, 2011 WL 208314
(M.D. Fla. Jan. 21, 2011) (summary judgment denied
because of material issues of fact).

The case law materially aids understanding the
context of the Final Rule because it shows how courts have
interpreted the language of § 778.114, which the Final Rule
left unaltered. Courts have developed a rational distinction
between bonuses based on time worked and bonuses based
on performance, with performance-based bonuses held to be
consistent with the FWW compensation method. The DOL
must have known of this body of law when it issued the
NPRM and during the process that led to the Final Rule.
Context is persuasive both in determining whether the
DOL's Final Rule comment was intended to address
performance-based bonuses, and whether a mere
interpretive opinion on that point could undo a uniform
interpretation by the courts applying the text of a
substantively unchanged regulation.

**D.    Full textual analysis of the NPRM and the Final Rule demonstrates the DOL's Final Rule comments do not address performance-based bonuses**

### 1.    *The NPRM*

By its terms, the NPRM had nothing to do with performance-based bonuses. *See* 73 Fed. Reg. at 43669-70.

Years later, the DOL decided not to implement the proposed rule and to leave the text of § 778.114 substantively unchanged. *See* 76 Fed. Reg. 18832. The DOL's explanatory language might be read out of context to offer the opinion that payment of any bonus is inconsistent with using the FWW method. That reading would be wrong. Both in its full textual context and in the surrounding context, the Final Rule is simply a decision to maintain the status quo under § 778.114 both in text and in how it differently applies to hours-based and performance-based bonuses.

In proposing to amend § 778.114, the DOL stated that "the regulations governing the [FWW] method . . . are in need of clarification and updating to delete outmoded

24

examples and eliminate confusion over the effect of paying bonus supplements and premium payments to affected employees." 73 Fed. Reg. at 43655-56. The DOL proposed to change § 778.114(a) to "provide[] that bona fide bonus or premium payments do not invalidate the [FWW] method of compensation." *Id.* at 43662. Specifically, the amendment would have added one sentence to § 778.114(a): "Payment of overtime premiums and other bonus and non-overtime premium payments will not invalidate the 'fluctuating workweek' method of overtime payment, but such payments must be included in the calculation of the regular rate unless excluded under section 7(e)(1) through (8) of the [FLSA]." *Id.* at 43670.

As shown in parts B and C, *ante*, the sole context for the DOL to propose an amendment was to address time-based bonuses. Only those bonuses had been held to preclude an employer's using the FWW method to calculate overtime pay. The DOL's purpose was to "eliminate any disincentive"—which could only arise from that judicial

25

authority—"for employers to pay additional bona fide bonus or premium payments." 73 Fed. Reg. at 43655.[5] The NPRM referred specifically to bonuses for working "undesirable hours" which had been held in the cases cited in part C, *ante*, to be inconsistent with the fixed weekly salary requirement. The illustration of a FWW calculation that the DOL proposed to add to § 778.114(b)(1) was modeled on an hourly-bonus case: *O'Brien*, *supra*, 350 F.3d 279, which involved a $10 wage premium for nightshift hours. 73 Fed. Reg. at

---

[5] In full: "Paying employees bonus or premium payments for certain activities such as working undesirable hours is a common and beneficial practice for both employers and their employees. The Department's proposed clarification would eliminate any disincentive for employers to pay additional bona fide bonus or premium payments." 73 Fed. Reg. at 43665.

43670.[6] Thus, the NPRM did not refer either directly or indirectly to bonuses based on a store or business unit's financial performance.

To sum up, the NPRM's proposed amendment to § 778.114 was targeted at having the single effect of establishing that paying time-based bonuses did not preclude use of the FWW compensation method. It did not implicate performance-based bonuses, which had never been held to offend the regulation's requirement of a fixed weekly salary for all hours worked.

---

[6] In full: "If, in each week in the examples in paragraph (b)(1) of this section, 4 of the hours the employee worked were nightshift hours compensated at a premium rate of an extra $5.00 per hour, the employee's total compensation would be calculated as follows: For the first week [of 40 hours] the employee is entitled to be paid $620 (salary compensation of $600 plus $20.00 of non-overtime premium pay, with no overtime hours); for the second week [of 44 hours] $648.20 (salary compensation of $600 plus $20.00 of non-overtime premium pay, with a regular rate of $14.09 and four hours of overtime at $7.05 for a total overtime payment of $28.20); for the third week [of 50 hours] $682.00 (salary compensation of $600 plus $20.00 of non-overtime premium pay, with a regular rate of $12.40 and ten hours of overtime at $6.20 for a total overtime payment of $62.00). . . ." 73 Fed. Reg. at 43670.

### 2.    *The Final Rule*

In the first mention of § 778.114 in the Final Rule, the DOL stated it was "not proceeding with some of the changes proposed in the NPRM including proposed changes to regulations regarding . . . the fluctuating workweek." 76 Fed. Reg. 18832. The FWW method is part 11 of the discussion in the Final Rule, and that part begins by describing the NPRM as proposing "to permit the payment of non-overtime bonuses and incentives without invalidating the guaranteed salary criterion required for the half-time overtime pay computation." 76 Fed. Reg. at 18848. The DOL explained that in publishing the NPRM, it had in mind "bonus or premium payments for certain activities such as working undesirable hours . . . a common and beneficial practice for employees." *Id.* at 18849. At the time of the NPRM, the DOL considered the modification of the rule to allow payment of these bonuses "consistent with the Supreme Court's decision in [*Overnight*], on which the existing regulation is patterned." *Id.*

28

Under the Final Rule, the substantive text of § 778.114 remained the same; the only textual changes deleted "gender-specific references and [updated] the computation examples to provide wage rates above the minimum wage and the exact calculation of the regular rate." 76 Fed. Reg. at 18850. Because the DOL did not make substantive changes to subsection (a), it did not adopt the computational examples proposed for subsection (b)(2). *Id.*

The DOL summarized the public comment on the proposed rule. 76 Fed. Reg. 18849-50. Comment was "sharply divided"; "commenters representing employers favored the revisions while commenters representing employees strongly opposed the revisions." *Id.* at 18849. The comments opposing the proposed amendment had two main criticisms: (1) "that receipt of premium and bonus payments is inconsistent with payment of a fixed salary"; and (2) "that the proposed revisions will encourage employers to schedule additional overtime for employees paid under the [FWW]

method or otherwise disadvantage workers by expanding its use to a larger portion of the workforce." *Id.*

A number of comments also "questioned the [DOL's] authority for making the revisions and asserted they would administratively overturn uniform, well-settled case law without justification." *Id.* Some commenters also "noted that the proposal would permit employers to reduce employees' fixed weekly salaries and shift the bulk of the employees' wages to bonus and premium pay." *Id.* at 18850.

None of the summarized comments presented a criticism applicable to performance-based bonuses unrelated to hours worked, and no comment summarized by the DOL addressed performance-based bonuses. *Id.* at 18849-50.

After summarizing comments, the DOL stated its analysis. 76 Fed. Reg. at 18850. In the first paragraph,[7] on which plaintiff has based his action, the DOL stated that

---

[7] In full: "While the [DOL] continues to believe that the payment of bonus and premium payments can be beneficial for employees in many other contexts, we have concluded that unless such payments are overtime premiums, they are incompatible with the [FWW] method of computing overtime under section 778.114. As several commenters noted, the proposed regulation could have had the unintended effect of permitting employers to pay a greatly reduced fixed salary and shift a large portion of employees' compensation into bonus and premium payments, potentially resulting in wide disparities in employees' weekly pay depending on the particular hours worked. It is just this type of wide disparity in weekly pay that the [FWW] method was intended to avoid by requiring the payment of a fixed amount as straight time pay for all hours in the workweek, whether few or many. The basis for allowing the half-time overtime premium computation under the [FWW] method is the mutual understanding between the employer and the employee regarding payment of a fixed amount as straight time pay for whatever hours are worked each workweek, regardless of their number. While the example provided in the NPRM of nightshift premiums resulted in a relatively modest change in the employee's straight time pay, the [DOL] now believes that the proposed regulation would have been inconsistent with the requirement of a fixed salary payment set forth by the Supreme Court in [*Overnight*]. Moreover, on closer examination, the [DOL] is persuaded that the courts have not been unduly challenged in applying the current regulation to additional bonus and premium payments." 76 Fed. Reg. at 18850 (citations to *O'Brien*, *Adeva, Dooley*, and *Ayers* omitted).

while it "continues to believe that the payment of bonus and premium payments can be beneficial for employees in many other contexts, we have concluded that unless such payments are overtime premiums, they are incompatible with the [FWW] method of computing overtime under section 778.114." *Id.* In context, "such payments" can only refer to the work-time-based payments proposed to be allowed in the NPRM and discussed in the comments to the NPRM, reported just above the DOL's analysis.

The DOL observed that, because the NPRM proposed allowing an employer to combine bonus and salary compensation to satisfy minimum wage requirements, it "could have had the unintended effect of permitting employers to pay a greatly reduced fixed salary and shift a large portion of employees' compensation into bonus and premium payments, potentially resulting in wide disparities in employees' weekly pay depending on the particular hours worked." 76 Fed. Reg. at 18850. That is not a criticism of performance-based bonuses, which do not cause a weekly

salary to vary by hours worked. Moreover, the fixed salary alone must satisfy the minimum wage requirement. The DOL also observed that "the courts have not been unduly challenged in applying the current regulation to additional bonus and premium payments," citing *O'Brien*, 350 F.3d 279 (a $10 differential for night shifts); *Adeva*, 2010 U.S. Dist. LEXIS 1963, 2010 WL 97991 (day-off-pay, offshore pay, and holiday pay); *Dooley*, 369 F.Supp.2d 81 (lump-sum pay for working on Saturday); *Ayers*, 2007 U.S. Dist. LEXIS 76539, 2007 WL 3171342 (at-sea or day-off pay). These are, of course, all cases addressing hours-based bonuses. And they all resolve the issue on the same basis: a salary is not fixed if the employee is paid a bonus for the types or quantity of hours worked.

In the following paragraph, the DOL stated it "does not believe that it would be appropriate to expand the use of this method of computing overtime pay beyond the scope of the current regulation" because the FWW method may encourage employers to require employees to work long

33

hours. 76 Red. Reg. at 18850. "Accordingly, the final rule has been modified from the proposal to restore the current rule requiring payment of the fixed salary amount as the straight time pay for whatever hours are worked in the workweek. . . ." *Id.* First, this is a strong statement that the DOL was changing nothing. Second, the reason not to expand the regulation is not a criticism of performance-based bonuses unrelated to hours worked. Third, the statement implicitly adopts the judicial interpretations of § 778.114(a) holding that commissions or other performance-based bonuses paid over multiple weeks do not preclude an employer from using the FWW method to calculate overtime pay.

The DOL mentioned performance based bonuses nowhere in the Final Rule. Neither did it implicitly touch on them by illustration or reference to authority. In rejecting a commenter's request "to clarify that all the rules regarding bonuses for nonexempt employees apply equally whether the nonexempt employee is paid by the hour, on a salary basis,

or under the fluctuating workweek method" the DOL
commented that "the principles for including bonuses in the
regular rate discussed in other sections of the regulations
are clear. . . ." 76 Fed. Reg. at 18849. If the DOL intended to
promulgate an opinion that performance-based bonuses
should preclude use of the FWW method, it is
incomprehensible that the DOL (i) would have underscored
the clarity of existing regulations—including 29 C.F.R.
§§ 778.119, 778.208, 778.209—that detail accounting for
performance pay in the payment of overtime and (ii) would
not have explicitly stated an opinion disapproving use of
those regulations in conjunction with the FWW method.

The DOL, being focused solely on time-based bonuses,
could not have anticipated that its language would
encourage a new round of wage-and-hour litigation attacking
performance-based bonuses. Indeed, the DOL stated that,
because the status quo was being maintained, there was,
necessarily, no "measurable economic impact on the public."
76 Fed. Reg. at 18853. That could not be true if the DOL was

35

attempting by opinion alone to disqualify employers who pay performance-based bonuses from using the FWW method to compute overtime compensation. As this case demonstrates, such a change in the status quo would have measurable economic impact on the public.

### E.   Summing up

In summary, the Final Rule, read in full and considered in its full context, explains why the DOL decided not to change the status quo, and that decision runs both ways—time-based bonuses did not become permissible in combination with the FWW method, but performance-based bonuses did not become impermissible. The Final Rule cannot reasonably be read to have changed the law pertaining to the FWW method in a manner never discussed in the NPRM, the public comments, or the Final Rule itself, a manner opposite from the general direction of the initially proposed amendment. The Final Rule therefore maintains the rational distinction between time-based bonuses, which are incompatible with the FWW-method requirement of a

"fixed salary" as "compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number," and performance-based bonuses, which are compatible. Plaintiff's case therefore is groundless, and the District Court correctly granted the motion to dismiss.

## IV.   If Plaintiff's Interpretation Were Right, the Final Rule Would Not Be Entitled to Any Weight

### A.   *Chevron* deference could not apply

Certain administrative regulations adopted pursuant to notice-and-comment rulemaking are entitled to deference by the Judicial Branch. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). The DOL issued § 778.114 as an interpretive bulletin; not having been subject to formal notice-and-comment rulemaking proceedings, § 778.114 is not entitled to *Chevron* deference. *See O'Brien*, 350 F.3d at 287 n.15; *Martinez v. Hilton Hotels Corp.*, 930 F.Supp.2d 508, 529 (S.D.N.Y. 2013); *cf. Stein v. Guardsmark, LLC*, No. 12 Civ. 4739 (JPO) 2013 U.S. Dist. LEXIS 103131, 2013 WL 3809463, at *2 (S.D.N.Y. July 23,

2013) (§ 778.114 accorded a "measure of deference" as the DOL's implementation of *Overnight*); *Smith v. Frac Tech Services, LLC*, No. No. 4:09CV00679 JLH, 2011 U.S. Dist. LEXIS 64079 at *7-9, 2011 WL 11528539 at *1-2 (E.D. Ark. June 15, 2011) (no deference to administrative interpretation of *Overnight*, and Final Rule's "reasoning is unconvincing").[8]

The standard of *Auer v. Robbins*, 519 U.S. 452, 461 (1997) applies to regulations adopted by the notice-and-comment process. *See* 519 U.S. at 456-57 (identifying regulation at issue as one entitled to *Chevron* deference); *Decker v. Northwest Envtl. Def. Ctr.*, 133 S.Ct. 1326, 1337 (2013) (same); *Berlin v. Renaissance Rental Partners, LLC*, 723 F.3d 119, 121 (2d Cir. 2013) (same). If this were not so, an agency's interpretation of a mere bulletin could perversely acquire the force of law.

---

[8] In *Condo v. Sysco Corp.*, 1 F.3d 599, 603-05 (7th Cir. 1993), the court used the *Chevron* three-step process to determine the validity of the FWW method under § 778.114. Given *Overnight*, 316 U.S. at 580, the need for that analysis is questionable.

At most, the DOL's Final Rule comment would be
" ' "entitled to respect" ' in proportion to [its] ' "power to
persuade" ' " because it is of the character of a policy
statement, manual, or enforcement guideline, not a
regulation with the force of law. *Wos v. E.M.A*, 133 S.Ct.
1391, 1402 (2013) (citation omitted); *see* 29 C.F.R. § 778.109
(the entire rule set provides "some examples of the proper
method of determining the regular rate of pay," not the only
method, and not regulations with the force of statute).

**B.    The Final Rule could not curtail use of the**
**FWW method because the NPRM did not**
**give notice of that possibility**

The DOL had no power to curtail use of the FWW
method by anything it issued under the NPRM. That is
because the NPRM gave no notice to interested parties that
the DOL was considering curtailment, but gave notice only
of potential expansion. *Allina Health Services v. Sibelius*,
746 F.3d 1102, 1107-08 (D.C. Cir. 2014). "An agency may
promulgate a rule that differs from a proposed rule only if

the final rule is a 'logical outgrowth' of the proposed rule. [Citation] A final rule is a logical outgrowth if affected parties should have anticipated that the relevant modification was possible." *Id.* at 1107. A proposal to clarify a rule "does not suggest that a potential underlying major issue is open for discussion." *Id.* at 1108. A rule that is not the logical outgrowth of a proposed rule is invalid. *Id.*; *Nat'l Black Media Coalition v. FCC*, 791 F.2d 1016, 1022 (2d Cir. 1986); *see Long Island Care Home, Ltd. v. Coke*, 551 U.S. 158, 174-75 (2007) (observing unanimity of the Courts of Appeals and finding that the notice permitted the agency to withdraw the proposal).

Here, the DOL could not have curtailed the established use of the FWW method by employers that pay financial-criteria bonuses by changing the interpretive regulations. If anything, *less* should be allowed by mere commentary in a final rule. The " 'switcheroo' " that an agency must not pull directly it must not be allowed to pull indirectly. *See Allina Health Services*, 746 F.3d at 1108.

**C.  Interpreted as plaintiff proposes, the Final Rule would lack any power to persuade**

Interpreted as plaintiff proposes, the relied-upon Final Rule comment would not be entitled to any weight in assessing the permissibility of performance-based bonuses paid in conjunction with a FWW compensation plan.

- The NPRM initiated a proceeding based on a stated intent to expand the use of the FWW method, not to constrict it. No interested party had any notice that the result might be a restriction. *See* 73 Fed. Reg. at 43669-70.

- Unsurprisingly, no interested party commented on restricting use of the FWW method, nor did performance-based bonuses come up in the public comments. 76 Fed. Reg. 18849-50.

- The Final Rule lacks any policy analysis supporting a restriction of the FWW method as to employers that pay performance-based bonuses. It lacks any legal analysis as to how performance-based bonuses could be

inconsistent with the requirement of a fixed weekly salary as straight-time payment for all hours worked. 76 Fed. Reg. at 18850. Little if any deference is due to a bare statement of opinion. *See*, *e.g.*, *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000).

●    There is no foundation for the DOL to give an opinion about performance-based bonuses because the relevant illustrative regulations—29 C.F.R. §§ 778.114, 778.119, 778.120, 778.208, 778.209—are not ambiguous. *Christensen*, 529 U.S. at 588. Indeed, it is fair to say that interpreted as plaintiff claims, the Final Rule would be entitled to no regard because it would go " 'beyond the meaning that the statute can bear. . . .' " *Freeman v. Quicken Loans, Inc.,* 132 S.Ct. 2034, 2040 (2012); *see Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2166 (2012).

## CONCLUSION

For the foregoing reasons, the Court of Appeals should

affirm the judgment in full.

Respectfully submitted,

s/ Charles A. Bird

McKENNA LONG & ALDRIDGE LLP
Charles A. Bird and James S. McNeill
Attorneys for RadioShack Corporation

## CERTIFICATE OF COMPLIANCE

I, Charles A. Bird, appellate counsel to RadioShack Corporation, certify that the foregoing brief is prepared in proportionally spaced Century Schoolbook 14-point type and, based on the word count of the word processing system used to prepare the brief, the brief is 7,150 words long.

s/ Charles A. Bird

**ADDENDUM**

## A.    Relevant statutes

### *29 U.S.C. § 207*

(Limited to all pertinent parts)

§ 207 Maximum hours

(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.

(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

. . . .

(e) "Regular rate" defined.

As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include--

(1) sums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency;

(2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his

employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment;

(3) Sums paid in recognition of services performed during a given period if either, (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly; or (b) the payments are made pursuant to a bona fide profit-sharing plan or trust or bona fide thrift or savings plan, meeting the requirements of the Administrator [Secretary] set forth in appropriate regulations which he shall issue, having due regard among other relevant factors, to the extent to which the amounts paid to the employee are determined without regard to hours of work, production, or efficiency; or (c) the payments are talent fees (as such talent fees are defined and delimited by regulations of the Administrator [Secretary]) paid to performers, including announcers, on radio and television programs;

(4) contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees;

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less

47

than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a), where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek; or

(8) any value or income derived from employer-provided grants or rights provided pursuant to a stock option, stock appreciation right, or bona fide employee stock purchase program which is not otherwise excludable under any of paragraphs (1) through (7) if--

(A) grants are made pursuant to a program, the terms and conditions of which are communicated to participating employees either at the beginning of the employee's participation in the program or at the time of the grant;

(B) in the case of stock options and stock appreciation rights, the grant or right cannot be exercisable for a period of at least 6 months after the time of grant (except that grants or rights may become exercisable because of an employee's death, disability, retirement, or a change in corporate ownership, or other circumstances permitted by regulation), and the exercise price is at least 85 percent of the fair market value of the stock at the time of grant;

(C) exercise of any grant or right is voluntary; and

(D) any determinations regarding the award of, and the amount of, employer-provided grants or rights that are based on performance are--

(i) made based upon meeting previously established performance criteria (which may include hours of work, efficiency, or productivity) of any business unit consisting of at least 10 employees or of a facility, except that, any determinations may be based on length of service or minimum schedule of hours or days of work; or

(ii) made based upon the past performance (which may include any criteria) of one or more employees in a given period so long as the determination is in the sole discretion of the employer and not pursuant to any prior contract.

. . . .

(h) Credit toward minimum wage or overtime compensation of amounts excluded from regular rate.

(1) Except as provided in paragraph (2), sums excluded from the regular rate pursuant to subsection (e) shall not be creditable toward wages required under section 6 or overtime compensation required under this section.

(2) Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section.

49

## B.    Regulation

### *29 C.F.R. § 778.114*

Fixed salary for fluctuating hours.

(a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

(b) The application of the principles above stated may be illustrated by the case of an employee whose hours of work do not customarily follow a regular schedule but vary from week to week, whose total weekly hours of work never

exceed 50 hours in a workweek, and whose salary of $ 600 a week is paid with the understanding that it constitutes the employee's compensation, except for overtime premiums, for whatever hours are worked in the workweek. If during the course of 4 weeks this employee works 40, 37.5, 50, and 48 hours, the regular hourly rate of pay in each of these weeks is $ 15.00, $ 16.00, $ 12.00, and $ 12.50, respectively. Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due. For the first week the employee is entitled to be paid $ 600; for the second week $ 600.00; for the third week $ 660 ($ 600 plus 10 hours at $ 6.00 or 40 hours at $ 12.00 plus 10 hours at $ 18.00); for the fourth week $ 650 ($ 600 plus 8 hours at $ 6.25, or 40 hours at $ 12.50 plus 8 hours at $ 18.75).

(c) The "fluctuating workweek" method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act, and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked. Typically, such salaries are paid to employees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate straight-time compensation for long workweeks as well as short ones, under the circumstances of the employment as a whole. Where all the legal prerequisites for use of the "fluctuating workweek" method of overtime payment are present, the Act, in requiring that "not less than" the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more. On the other hand, where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the Act

cannot be rested on any application of the fluctuating workweek overtime formula.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the **Appellee's Answer Brief** with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on **June 13, 2014**.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed at San Diego, California on June 13, 2014.

*s/Charles A. Bird*

Charles A. Bird